**STATE**

v.

**William PURRO.**

**No. 90–171–C.A.**

Supreme Court of Rhode Island.

June 27, 1991.

---

Annie Goldberg, Asst. Atty. Gen., Providence, for plaintiff.

Andrew A. Bucci, Providence, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the defendant's appeal from his conviction on two counts of first-degree sexual assault. We affirm. The facts of the case insofar as they are pertinent to this appeal are as follows.

The victim, Anthony Purro (Anthony), was a young child when his natural mother married his adoptive father, William Purro (Purro), defendant in this case. When Anthony was approximately eight years old, Purro began sexually abusing him. Anthony recounted two of these incidents of sexual abuse with some specificity while under oath.

Anthony testified that the first incident occurred while he and Purro were picking mushrooms in the wooded area surrounding their home. At one point during their excursion Purro pulled down his pants and exposed himself to Anthony. He masturbated in front of the boy and then asked Anthony to touch his penis. Purro then had Anthony pull down his own pants and proceeded to fondle Anthony's penis manually and perform fellatio upon him.

Another kind of "touching" occurred in the bathroom of their family home several months after the first incident in the woods. Anthony testified that Purro told him to bend over the toilet and then anally penetrated Anthony. Anthony recalled that it hurt and that there was once some bleeding after an anal penetration. When he asked Purro about the bleeding, he was told that it would eventually go away.

Anthony testified that the sex acts would occur approximately three or four times a week when he was between eight and thirteen years old. After Anthony told Purro that he "didn't want to anymore," a couple of weeks or a month would pass with no sexual contact. But the episodes of sexual assault would resume after these brief periods. In order to get him to comply with Purro's requests, Anthony testified that "[h]e [Purro] would give me spending money. He would take me on fishing trips and treat me like a normal father and that's something that, you know, I really didn't have unless I did the things he wanted me to do." Furthermore, Purro allegedly told Anthony that "most kids and sons and daughters' first experiences were with their parents" and that "he would kill himself if I ever told anybody."

Purro was charged by indictment with three counts of first-degree sexual assault, two counts relating to conduct occurring before Anthony reached the age of thirteen and one count relating to conduct thereafter. The jury found Purro guilty of two counts of first-degree sexual assault and acquitted him on the third count, relating to conduct allegedly occurring after Anthony turned thirteen. The defendant's motions for judgment of acquittal and a new trial were denied. He was sentenced to consecutive terms of thirty-five years' imprisonment at the Adult Correctional Institutions, with ten years of each term suspended and twenty-five of each to serve. On appeal Purro attacks his conviction alleging that the trial justice's refusal to dismiss one of the two counts of first-degree sexual assault as duplicitous constituted reversible error and that trial counsel requested, but was denied, the opportunity

to have the victim physically examined before the trial.[1]

Counts 1 and 2 both charge Purro with sexual penetration, in violation of G.L.1956 (1981 Reenactment) §§ 11–37–2 and 11–37–3, between June 1, 1979, and November 2, 1983. Purro claims that the elements of the two charges are identical and that he has therefore been twice placed in jeopardy for the same crime in violation of his constitutional rights under the Fifth Amendment to the United States Constitution and article 1, section 7, of the Rhode Island Constitution. In support of his claim, defendant cites *State ex rel. Scott v. Berberian,* 109 R.I. 309, 284 A.2d 590 (1971), wherein this court adopted the test established in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), for determining whether an accused is placed in double jeopardy for committing only one offense. "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

■ In the instant case the state makes no attempt to convict defendant on two charges of sexual assault based on only one sexual act; rather, the conviction rests upon the finding by the jury that two distinct and separate acts of sexual assault occurred. The two separate acts, one occurring in the woods and one in the bathroom, properly constitute the basis for two separate charges of first-degree sexual assault.

In its brief the state distinguishes *State v. Barnes,* 559 A.2d 136 (R.I.1989), from the instant case. The defendant in *Barnes* was charged with twelve counts of first-degree sexual assault and six counts of an abominable and detestable crime against nature for a total of eighteen sexual offenses. However, the evidence indicated that the defendant engaged in thirteen sexual assaults. It was therefore apparent in *Barnes* that "some, if not all, of the actions underlying the abominable-and-detestable-crime convictions were the same acts that constituted the basis of the first-degree sexual-assault convictions." *Id.* at 143. This court sustained defendant's appeal relating to the abominable-and-detestable-crimes-against-nature counts since they were properly treated as merged with the first-degree sexual-assault counts.

Anthony testified that sexual assaults occurred three or four times a week for several years. He recounted at least two of these assaults in some detail while on the witness stand and testified that numerous other assaults, both oral and anal, occurred "[i]n my home, in our basement, in our bathroom, in his room, all over the house and in the woods also." In light of Anthony's testimony the state very cautiously charged Purro with only two counts of sexual assault of a child under thirteen. The state could conceivably have brought a separate charge for each of the hundreds of assaults that allegedly occurred before Anthony's thirteenth birthday. Unlike the situation in *Barnes,* where several single penetrations constituted the basis for two separate charges, the state showed restraint in the instant case by charging Purro with three counts of sexual assault in light of Anthony's testimony that hundreds of separate acts of penetration had occurred.

The wording of the first two counts is very similar because it is the same statute that has been violated, the same victim and defendant were involved, and both incidents occurred in the same period. However, Purro is not twice placed in jeopardy for the same offense since the charges are based on two separate acts.

Purro's next basis for appeal is that his request for the opportunity to have a physician examine Anthony prior to trial was denied. He argues that "testimony from a physician would have been a significant

---

**1.** The defendant also claims ineffective assistance of trial counsel as a ground for postconviction relief, should he fail on direct appeal.

factor, had it been determined that the victim had not been anally invaded, in the determination of the jury since this was a substantially important issue resulting from the testimony of the victim."

The state contends that a physical examination of Anthony prior to trial would have had no bearing on the jury's verdict. In support of its contention, it refers to Anthony's testimony that he only experienced pain and bleeding on entry initially and that the episodes of anal penetration by defendant had ended around the time Anthony turned thirteen. Anthony was eighteen at the time of trial when the physical examination was requested; approximately ten years had elapsed since Anthony had experienced pain or bleeding as a result of penetration. Moreover, the episodes of anal penetration had ended altogether approximately five years earlier. Owing to the remoteness in time of the penetrations in relation to the requested examination, the state argues that an examination at this time could "scarcely have supported an opinion with 'medical certitude' that anal penetration never occurred."

As this court has recognized in numerous cases, questions of evidentiary relevance, materiality, and admissibility are within the sound discretion of the trial justice. *See Thomas v. Amway Corp.*, 488 A.2d 716 (R.I.1985); *Kelaghan v. Roberts*, 433 A.2d 226 (R.I.1981); and *State v. Gelinas*, 417 A.2d 1381 (R.I.1980). The trial justice must clearly have abused his or her discretion before reversal is warranted. *State v. Gelinas*, 417 A.2d at 1386.

We find no such abuse of discretion on the part of the trial justice in this case. He questioned the relevance and the necessity of allowing a physical examination of Anthony nearly ten years after the events in question and found both to be lacking. Considering the passage of time and the improbability of any conclusive findings, we feel his discretion was certainly not abused.

For the foregoing reasons the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed. The papers in the case are remanded to the Superior Court.