**STATE**

v.

**Glenn A. SALUTER.**

No. 96–380–C.A.

Supreme Court of Rhode Island.

June 30, 1998.

Annie Goldberg, Assistant Attorney General, Aaron Weisman, Assistant Attorney General for Plaintiff.

John A. Macfadyen, III, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Glenn A. Saluter (defendant). Following a jury trial in the Superior Court, the defendant was convicted of nine counts of sexual assault. For the following reasons, we affirm two of the convictions and vacate the remaining seven. The facts insofar as they are pertinent to this appeal follow.

1. We have removed the victim-identifying information, namely, the addresses where the offenses

### Facts and Procedural History

On March 8, 1994, defendant was charged by indictment with two counts of first-degree sexual assault in violation of G.L.1956 §§ 11–37–2 and 11–37–3, four counts of first-degree child molestation in violation of §§ 11–37–8.1 and 11–37–8.2, and three counts of second-degree child molestation in violation of §§ 11–37–8.3 and 11–37–8.4. The counts related to offenses that occurred between April 1, 1984, and April 30, 1987. The complaining witness, whom we shall call Amy, was the daughter of defendant's then-girlfriend with whom he lived for significant portions of the period circumscribed in the indictment. Amy, who was born in March 1976, was under thirteen years of age at all times pertinent to the charges.

Shortly after he was charged, defendant moved for a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure. A redacted version of the state's response to the motion is included as an appendix to this opinion.[1] In the bill of particulars, the state alleged that defendant committed the acts charged in seven of the counts on multiple occasions. For example, count 1 as specified by the bill of particulars alleged that during the period from April 1, 1984, through June 24, 1985, "defendant committed cunnilingus on the complainant more than once, and with a frequency of approximately more than once per week during the period." In only two of the nine counts, namely, count 5 and count 8, did the state allege a single incident of the conduct charged in that count.

The defendant subsequently filed a motion to dismiss, challenging the sufficiency of the bill of particulars and asserting that the charges against him were duplicitous, in violation of Rule 8(a) of the Superior Court Rules of Criminal Procedure. Moreover, defendant alleged, the charging papers deprived him of the minimum notice required under the Federal Constitution and the laws of Rhode Island, such that he faced a risk of being convicted for offenses that were not in fact the basis for the proffered charges. The state argued that no per se rule against

occurred. *See Providence Journal Co. v. Rodgers,* 711 A.2d 1131 (R.I. 1998).

duplicity exists in Rhode Island and claimed that the bill of particulars should be accepted as adequate because "the victim's memory, in this and many cases like it, is not sufficiently firm for the State to have pleaded the case in the way that the defendant urges that it must." The state also suggested that the trial court reexamine the law of sexual assault and child molestation and define sexual assault as a continuing offense. The defendant's motion to dismiss was denied after the trial justice concluded that the indictment charged "nine specific acts" and had afforded defendant adequate notice. The justice also reassured defense counsel that appropriate jury instructions would alleviate any danger that the acts considered by the petit jury as the bases for its verdicts might not correspond to those acts charged by the grand jury.

The state presented Amy and her mother as its witnesses at trial, and their testimony constituted the whole of the state's case. No medical or physical evidence was offered. The defendant testified in his own defense and denied the accusations in their entirety.

The undisputed testimony established that defendant, who also maintained a home in Maryland, had begun living with Amy and her mother "as a family" in 1983. He subsequently lived with them at several different addresses in West Warwick between 1984 and 1987. Amy testified that defendant "was a father figure" to her and that he frequently was at home with her after she returned from school. The defendant acknowledged that he was alone with Amy in the evenings as often as several times a week during the period in question, although he claimed that he cared for her less often than Amy contended.

Despite the prosecution's earlier assertions that Amy's memories were imprecise, she was able at trial to recall a number of specific incidents of the charged conduct. For example, Amy recounted several specific occasions when defendant either committed cunnilingus on her or digitally penetrated her vagina. She described these assaults in great detail that need not be repeated here. She also described such abuse in more general terms, however. For example, she testified that defendant would digitally penetrate her while watching pornographic movies "maybe once a month." The transcripts of the trial indicate that there was confusion at times among the parties' counsel and the trial justice concerning what portions of Amy's testimony corresponded to the acts charged in the various counts of the indictment.

The jury convicted defendant on all nine counts. The defendant's motion for a new trial was denied by the trial justice, who remarked that "the jury's verdict was a fair verdict, based upon the evidence which had been presented." The defendant filed a timely appeal to this Court in which he raised two issues. First, he argued that the nature of the indictment and the bill of particulars, coupled with the nature of the evidence admitted and the trial justice's failure to give a unanimity instruction to the jury, resulted in uncertainty over whether "the conduct which formed the petit jury's basis for decision was the same conduct for which the indictment had been returned." Second, defendant contended that "the trial court committed reversible error in its instructions to the jury."

### Bill of Particulars and Defects of Notice

■ The most serious charge that defendant has raised against his prosecution and conviction is that the counts asserted against him were duplicitous, that is, they included multiple charges of the offense within a single count. The defendant maintained that, when coupled with the evidence presented against him, the duplicitous charging created the danger that he was convicted of offenses that were not charged by the grand jury's indictment or that he was convicted by a less than unanimous petit jury. In essence, defendant argued that the cumulative effect of these errors was such that he was deprived of his fundamental right to due process. Minimal due process requires that a defendant be afforded "adequate notice of the offense with which he is charged." *State v. Hendershot*, 415 A.2d 1047, 1048 (R.I.1980). It is a corollary and equally axiomatic principle of due process that a "person charged with a particular offense cannot be convicted of another and distinct offense even though the other is closely related or of the same

general character." *In re Fiske,* 117 R.I. 454, 456, 367 A.2d 1069, 1071–72 (1977).

## A

### Duplicity

■ The term "duplicity" refers to the joining of two or more offenses, however numerous, in a single count of an indictment. *See State v. Mollicone,* 654 A.2d 311, 321 (R.I.1995) ("Duplicity is defined in the criminal context as '[t]he joining in a single count of two or more distinct and separate offenses.' ") (quoting Black's Law Dictionary 503 (6th ed.1990)). The unforgivable infirmities of duplicity have been amply catalogued. The Second Circuit has explained that

"[i]mportant policy considerations underlie the rule that two or more distinct crimes should not be alleged in a single count of an indictment. If an indictment is duplicitous, a general verdict of guilty will not reveal whether the jury found defendant guilty of only one crime and not the other, or guilty of both. * * * Moreover, a guilty verdict on a duplicitous indictment does not indicate whether the jury found defendant guilty without having reached an [*sic*] unanimous verdict on the commission of a particular offense. Thus, the prohibition of duplicity is said to implicate a defendant's rights to notice of the charge against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." *United States v. Murray,* 618 F.2d 892, 896 (2d Cir.1980).

The nine counts of the indictment in this case all used the same formulaic language in setting forth the charges against defendant. Count 3, for example, charged that

"GLENN A. SALUTER, alias John Doe, of the State . of Maryland, *on a day and dates* between June 25, 1985, and December 31, 1986, at West Warwick, in the County of Kent, did engage in sexual penetration, to wit, cunnilingus, with [Amy], a person under thirteen (13) years of age, in violation of § 11–37–8.1 and § 11–37–8.2 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 1981)." (Emphasis added.)

■ Each count of the indictment used the phrase "on a day and dates" to describe the period of the act, or acts, charged in the indictment. It is not clear from the indictment whether defendant was charged with a single act or multiple acts in each count. Thus, an apparent, or at least arguable, issue of duplicity inhered in the indictment itself, irrespective of the content of the bill of particulars.

■ Although the description "day and dates" used in the indictment was regrettable, it did not render the indictment defective *per se.* So-called short-form charging is authorized in Rhode Island, and an indictment may track the words of the statute criminalizing the act being charged. *See* G.L.1956 § 12–12–1.4 ("An indictment, information, or complaint which provides the defendant and the court with adequate notice of the offense being charged shall be sufficient if the offense is charged either: (1)[b]y using the name given to the offense in terms of either the common law or by statute, or (2)[b]y stating the definition of the offense in terms of substantially the same meaning."); *see also State v. Tweedie,* 444 A.2d 855, 857 (R.I.1982) (concluding that a criminal complaint · fully complied with § 12–12–1.4 and federal and state constitutional requirements when it charged the defendant by using the statutory name of the offense and specifically referred to the proscriptive statute). A general charge made by an indictment can be reduced to a specific factual offense in a bill of particulars that would specify in sufficient detail the elements of the crime being charged. A bill of particulars could not, however, transform an indictment's count of embezzlement into a murder charge. *See State v. Collins,* 543 A.2d 641, 654 (R.I.1988), *overruled on other grounds, State v. Rios,* 702 A.2d 889, 890 (R.I.1997) (noting that "[t]he function of a bill of particulars is to provide the defendant with the factual detail omitted from an indictment or information. Its primary purpose is to supply the defendant with such particulars as are necessary in order that judicial surprise is avoided at trial") (citing LaFave & Israel, *Criminal Procedure* § 19.2(f) at 717–18 (1985)); *see also Holdren v. Legursky,* 16 F.3d 57, 62 (4th

Cir.), *cert. denied,* 513 U.S. 831, 115 S.Ct. 106, 130 L.Ed.2d 53 (1994) (finding sufficient indictment that "track[ed] the statutory language verbatim" and "note[d] the specific sex act charged in each count"); *State v. Cassey,* 543 A.2d 670, 675 (R.I.1988) (reiterating that an indictment need not " 'be so distinct and minute in its allegations that it will constitute, *without oral proof,* a bar to another indictment' "); *State v. McParlin,* 422 A.2d 742, 745 (R.I.1980) (discussing Rhode Island's "liberal discovery mechanisms" and the protections they afford defendants).

In the case before us, an adequate bill of particulars could have—but did not—clarify the apparent ambiguity implicit in the language "on a day and dates" in seven of the counts. Unfortunately, instead of clarifying the charges for defendant, the bill of particulars affirmed the duplicity in those seven counts. Only with respect to counts 5 and 8 did the bill of particulars specify that one single act was being charged by each count, thereby removing the shadow of any apparent duplicity. Specifically, count 5 alleged that defendant had penetrated Amy's vagina with his penis on one occasion between October and December of 1986, and count 8 alleged that he had forced his penis into her mouth on one occasion on a date in April 1987 while the two were in his automobile.

For at least ninety years, this Court has held that charging papers are fatally flawed if they are duplicitous. In *State v. Custer,* 28 R.I. 228, 66 A. 309 (1907), a one-count complaint was quashed on the ground of duplicity. In explaining that decision, the Court stated that "[t]he allegation in the complaint is fatally defective. It clearly charges the first voting to have been willful and fraudulent, and then alleges the second voting also to be illegal. It thus charges two offenses in one count; and is bad for duplicity." *Id.* at 228, 66 A. at 309. This Court has not confronted the issue of duplicity in recent years. Rule 8(a) of the Superior Court Rules of Criminal Procedure provides:

"Joinder of Offenses. Two (2) or more offenses may be charged in the same indictment, information, or complaint *in a separate count for each offense* if the offenses charged, whether felonies or misde-

meanors or both, are of the same or similar character or are based on the same act or transaction or on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan."

In *State v. LaPlante,* 122 R.I. 446, 409 A.2d 130 (1979), we determined that the defendant had waived his claim of duplicity and concluded that "a motion to dismiss based on a duplicitous complaint is * * * an objection [based on a defect of the complaint]." *Id.* at 449, 409 A.2d at 131. Again, in *State v. Roberts,* 420 A.2d 837 (R.I.1980), we refused to consider a defendant's duplicity claim on the merits because the defendant in that case had waived his objection to the complaint due to his failure to comply with the rules of criminal procedure. We did observe, however, pointing to *LaPlante,* that "the proper way to attack a duplicitous complaint, indictment, or information is by motion pursuant to Super. R.Crim. P. 12(b)(2),(3)." *Id.* 420 A.2d at 840.

The dangers of duplicity in this case can be illustrated by reviewing the manner in which one of the duplicitous counts was dealt with at trial. The bill of particulars in respect to count 2 of the indictment read as follows:

"Count 2. The State's answer with respect to dates, times, and places is the same as Count 1. The allegations are that defendant inserted his finger or fingers into the vagina of the complainant more than once, and with a frequency of 'quite a few times per week' during the period alleged in the indictment."

Amy testified that defendant digitally penetrated her vagina numerous times. She recounted one incident in which she had been wearing a striped nightgown when the offense occurred and another when she had been forced to endure the same abuse in exchange for being excused from having to eat her vegetables at dinner. Both these incidents took place within the time frame charged by count 2, and both were offered at trial as evidence of the charged conduct. The trial justice appeared to suggest that the dinner incident was the act charged by count 2, whereas the state contended in its closing

argument that the nightgown incident satisfied its burden of proof for that count. Either might have been correct. If some members of the jury were convinced beyond a reasonable doubt that the nightgown incident did take place while the remaining members were not adequately convinced of that allegation but instead were convinced beyond a reasonable doubt that the dinner quid pro quo had occurred, the jury could have returned a conviction on count 2 without the actual jury unanimity required for conviction under our laws. *See also United States v. Valerio,* 48 F.3d 58, 63 (1st Cir.1995) ("Although other factors are involved, the prohibition against duplicitous indictments arises primarily out of a concern that the jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of any particular offense.").

Unlike the defendants in *LaPlante* and *Roberts,* defendant in this case did object to the duplicity of the indictment by filing a motion to dismiss. It is clear, however, that counts 5 and 8 of the indictment were the only counts that, when amplified by the bill of particulars, charged a single criminal act. With regard to those two counts, defendant suffered no prejudice from the ambiguity or apparent duplicity of the indictment. Accordingly, count 5 and count 8 were not duplicitous, and defendant's convictions on those two counts are affirmed. Although the bill of particulars did not vitiate the indictment with respect to the other counts, it failed to provide defendant with adequate notice of specific charged offenses against which he could prepare a defense. Therefore, those portions of the bill of particulars specifying counts 1, 2, 3, 4, 6, 7, and 9 must be stricken, and consequently we vacate the convictions returned on those counts. An amended bill of particulars may be filed, setting forth a single offense for each count of the indictment.

### B

#### Continuing Course of Conduct Offenses

■ The parties suggested to this Court that reconceptualization of child sexual assault as a continuing course of conduct crime would eliminate duplicity problems in charging these offenses. Although we recognize that the courts of some states permit charging sex crimes against children as continuing offenses, *see, e.g., State v. Altgilbers,* 109 N.M. 453, 786 P.2d 680, 691–93 (1989) (considering decision to charge child sex crime as continuing offense to be within prosecutorial discretion and cataloging treatment of this question by other states); *but see People v. Algarin,* 166 A.D.2d 287, 560 N.Y.S.2d 771, 773 (N.Y.App.1990) (observing that child molestation cannot be charged as " 'a continuous course of conduct' " in New York and that an indictment must identify one specific act for each count charged), it is nevertheless our opinion that the definition of what constitutes a crime in Rhode Island is properly the domain of the Legislature.

We do note, however, that although we decline to create a crime of continuing sexual assault judicially, the state can, nevertheless, successfully convict a defendant who has repeatedly abused or molested a child over time. In *State v. Purro,* 593 A.2d 450 (R.I. 1991), the testimony of the complaining witness revealed a pattern of repeated and continuing sexual abuse similar to that about which Amy testified. In *Purro,* the defendant was charged with three counts of first-degree sexual assault and was convicted of two of them. *Id.* at 450. We rejected Purro's arguments that his indictment had been duplicitous and that he had twice been placed in jeopardy in violation of his constitutional rights, explaining that

"the state makes no attempt to convict defendant on two charges of sexual assault based on only one sexual act; rather, the conviction rests upon the finding by the jury that two distinct and separate acts of sexual assault occurred. The two separate acts, one occurring in the woods and one in the bathroom, properly constitute the basis for two separate charges of first-degree sexual assault.

" * * *

"Anthony [the victim] testified that sexual assaults occurred three or four times a week for several years. He recounted at least two of these assaults in some detail while on the witness stand and testified that numerous other assaults, both oral

and anal, occurred '[i]n my home, in our basement, in our bathroom, in his room, all over the house and in the woods also.' In light of Anthony's testimony the state very cautiously charged Purro with only two counts of sexual assault of a child under thirteen. The state could conceivably have brought a separate charge for each of the hundreds of assaults that allegedly occurred before Anthony's thirteenth birthday. * * * [T]he state showed restraint in the instant case by charging Purro with three counts of sexual assault in light of Anthony's testimony that hundreds of separate acts of penetration had occurred." *Id.* at 452.

The convictions that we upheld in *Purro* illustrate that the state's lack of authority to charge child sexual assault as a continuing course of conduct crime will not impede the conviction, upon a properly constituted indictment or bill of particulars, of a defendant who has repeatedly sexually abused a child. In the present case, the state may file a new and legally sufficient bill of particulars against defendant, upon which it could then prove its specific allegations. In any case, we concur with the state that it should not be easier to convict a defendant who has molested a child on only one occasion than it would be to convict a defendant who has repeatedly inflicted such abuse upon his or her victim. It is only necessary that each count should charge a single offense.

### Instruction on Jury Unanimity

 As we have already indicated, the issue of jury unanimity is closely related to the dangers inherent in duplicitous charging papers. The defendant requested that a unanimity instruction be given, charging as follows:

> "No guilty verdict may enter unless all twelve jurors have concluded beyond a reasonable doubt that defendant committed the particular act charged in the Indictment, and not some other uncharged act or acts. This means that you must return a verdict of not guilty unless each of you concludes beyond a reasonable doubt that defendant committed the particular act charged in the indictment, and not some other uncharged act or acts."

The defendant's argument that the jurors "must unanimously agree, not only on a verdict 'as to each count,' * * * but also on the *foundation* for the verdict on each count" is well taken. *Cf. State v. Kitchen,* 110 Wash.2d 403, 756 P.2d 105, 109 (1988) (insisting that when multiple acts have been alleged "the jury must be unanimous as to which act or incident constitutes the crime"). The omission of this requested instruction does not, however, compromise the guilty verdicts that the jury returned on count 5 and count 8 because Amy testified that the one incident of intercourse and the one incident of fellatio that the indictment charged were the *only* occurrences of those forms of abuse. No evidence of any similar acts was presented to the jury. Thus, defendant cannot successfully argue that the jury either was confused about what constituted the charged conduct or was less than unanimous in its bases for the guilty verdicts returned on these two counts.

### Other Jury Instructions

The defendant also argued on appeal that the trial justice committed other errors in instructing the jury and that these errors require the reversal of defendant's convictions. The instructions "repeatedly depreciated the legal standards delineating the margin of error in a criminal case [and were cumulatively] overwhelming, resulting in the denial of defendant's rights to trial by jury and to the due process of law," according to defendant.

 The defendant first contended that the trial justice's instruction on reasonable doubt constituted "patent error" because it "shift[ed] some portion of the burden of proof to the defense." We disagree.

In relevant part, the trial justice initially instructed the jury as follows:

> "If after you have examined all of the evidence, your mind is left with a firm conviction of the truth of the State's charges, then you must return a verdict of guilty. If, on the other hand, you think there is a *real possibility that the defendant is not guilty,* then you must give the

benefit to the defendant." (Emphasis added.)

When the deliberating jurors subsequently asked for further guidance on the principle of reasonable doubt, the trial justice advised in pertinent part, "If after you have examined all the evidence you feel there is a real possibility that the defendant is not guilty, you must give the benefit of that doubt to the defendant." The defendant maintained that "the jury was [thus] informed that acquittal required a finding of a 'real possibility' of innocence," and the burden to establish that possibility impermissibly rested with defendant.

As defendant correctly observed in his brief to this Court, "[t]he 'real possibility' language," the alleged bane of the trial justice's reasonable doubt instruction, was taken nearly verbatim from the Federal Judicial Center's *Pattern Criminal Jury Instructions,* Instruction No. 21 (1988).[2] Moreover, preceding the contested portion of the instruction, the trial justice unequivocally instructed the jury that

> "[i]n this case, and in every criminal case, if you are to find the defendant guilty, the State must prove the guilt of the defendant, as to each material element of the crimes charged, beyond a reasonable doubt. Always bear in mind that *a defendant in a criminal case is not required to prove his innocence, nor is he required to offer evidence of any kind, nor to disprove or explain anything.*" (Emphasis added.)

Addressing a claim similar to that raised by defendant here, the First Circuit Court of Appeals concluded:

> "Although we think that the ['real possibility of innocence' language] might possibly engender some confusion as to the burden of proof if it stood by itself, it is clear that when the charge is read as a whole, there was no error. '[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.' *Cupp v.*

*Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). The district court also instructed the jury: 'The burden of proving the defendant guilty beyond a reasonable doubt rests upon the government. This burden never shifts throughout trial. The law does not require a defendant to prove his innocence or for that matter to produce any evidence.' This was sufficient to dispel any possible confusion or misunderstanding arising from the reasonable doubt definition." *United States v. Gibson,* 726 F.2d 869, 874 (1st Cir.), *cert. denied,* 466 U.S. 960, 104 S.Ct. 2174, 80 L.Ed.2d 557 (1984).

Because our examination of the reasonable doubt instruction in its entirety convinces us that " 'taken as a whole, the instruction[ ] correctly conveyed the concept of reasonable doubt to the jury,' " *State v. Firth,* 708 A.2d 526, 533 (R.I.1998) (quoting *Victor v. Nebraska,* 511 U.S. 1, 22, 114 S.Ct. 1239, 1251, 127 L.Ed.2d 583, 601 (1994)), we conclude that the reasonable doubt instruction was not erroneous.

 The defendant also argued that reversible error inhered in the trial justice's instruction on corroboration. In the contested instruction, the trial justice stated, "Under our laws, if you as jurors accept and believe the testimony of the victim, that testimony need not be corroborated." According to defendant, by virtue of this statement, "[t]he trial court thus in one fell swoop designated the complaining witness a 'victim,' singled out her testimony for unique treatment, and informed jurors that, as a matter of law, the want of any corroboration cannot constitute grounds for concluding that the State had failed to prove its case beyond a reasonable doubt." The defendant further noted that the trial justice refused to give a requested defense instruction that emphasized that jurors may consider the presence or absence of corroborating evidence in assessing whether the state has met its burden of proof beyond a reasonable doubt.

---

2. Instruction No. 21 of the Federal Judicial Center's *Pattern Criminal Jury Instructions* (1988) reads in relevant part:

"If, based on your consideration of the evidence, you are firmly convinced that the defen-

dant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty."

The record revealed that prior to instructing the jury that Amy's testimony "need not be corroborated," the trial justice had instructed the jurors that "[i]n evaluating the credibility of witnesses, you may consider many things. * * * You may * * * consider and determine whether or not there is any other evidence or testimony that tends to support, corroborate, or contradict the testimony that a particular witness has given you." Hence, we discern no error in the trial justice's instructions that accurately advised the jurors on the applicable law on corroboration. *See, e.g., State v. Wiggin,* 106 R.I. 69, 73, 256 A.2d 219, 221 (1969) ("[T]here is no rule of law presently existing in this state which requires corroboration."). Moreover, our review of the trial transcript revealed that the trial justice's refusal to give defendant's proffered instruction on corroboration was not preserved. Rule 30 of the Superior Court Rules of Criminal Procedure provides in pertinent part that "[n]o party may assign as error any portion of the charge *or omission therefrom* unless the party objects thereto before the jury retires to consider its verdict." (Emphasis added.) Therefore, any alleged error in the trial justice's refusal to give a corroboration instruction has been waived. *State v. Teixeira,* 706 A.2d 1348, 1350 (R.I.1998) (mem.); *State v. Martino,* 642 A.2d 679, 681 (R.I.1994).

Although the trial justice regrettably referred to Amy as a "victim" in the course of giving the corroboration instruction, no objection to this comment was made at trial. It is axiomatic that " 'this [C]ourt will not consider an issue raised for the first time on appeal that was not properly presented before the trial court.' " *State v. Gatone,* 698 A.2d 230, 242 (R.I.1997) (quoting *State v. Rivera,* 640 A.2d 524, 526–27 (R.I.1994)). Because defendant has not identified any of the narrow exceptions to the raise-or-waive rule as applicable to his claim, we hold that the claim was waived.

▮ The defendant next argued that, because "[n]owhere in the trial court's final instructions were the jurors ever told that the defendant was presumed innocent," defendant's convictions cannot stand. However, defendant's claim on this issue is rendered nugatory by his own acknowledgment of his "inadvertent failure to lodge a contemporaneous objection to the omission." Thus, the issue was not properly preserved below and is therefore waived on appeal. *See Gatone, ante.*

▮ We do agree, however, with one of defendant's preserved objections to the instructions. The defendant maintained that the trial justice erred by "withdr[awing] from the jury the issue of whether the State had proved the element of force and coercion alleged in Counts 1 and 2," and "thereby essentially directed a verdict" on that element.

In the instruction on force and coercion as an element of counts 1 and 2,[3] the trial justice advised:

"In considering the evidence in this matter, there is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, *inherent of a situation of an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult,* instructs the child to submit to the performance of sexual acts. In such cases, forcible compulsion *derives from the respective capacities of the child and the adult* sufficient to induce the child to submit to the wishes of the adult without the use of force or violence or the explicit threat of force or violence." (Emphases added.)

The state has pointed out that this instruction included language taken directly from this Court's opinion in *State v. St. Amant,* 536 A.2d 897, 900–01 (R.I.1988). *St. Amant* referred favorably to "the position taken by the Supreme Court of Pennsylvania when it addressed the definition of force, coercion, or compulsion as used in sexual-assault statutes," *id.* at 900 (citing *Commonwealth v.*

---

**3.** Counts 1 and 2 charged that defendant "did engage in sexual penetration, to wit, cunnilingus, with [Amy], by force and coercion" and "did engage in sexual penetration, to wit, digital pen- etration, with [Amy], by force and coercion" in violation of G.L.1956 §§ 11-37-2 and 11-37-3, respectively.

*Rhodes*, 510 Pa. 537, 510 A.2d 1217, 1227 (1986)), but it did not jettison the well-established requirement of due process that the state must prove each element of a criminal offense beyond a reasonable doubt. Moreover, the *Rhodes* Court, addressing a factual scenario in which an eight-year-old child was sexually assaulted, 510 A.2d at 1227, stated unequivocally:

"The determination of whether there is sufficient evidence to demonstrate beyond a reasonable doubt that an accused engaged in sexual intercourse by forcible compulsion * * * or by the threat of such forcible compulsion that would prevent resistance by a person of reasonable resolution is, of course, a determination that will be made in each case based upon the totality of the circumstances that have been presented to the fact finder." *Id.* at 1226.

*See also In re Vincent*, 122 R.I. 848, 413 A.2d 78, 81 (1980) (observing that even "a statutory presumption or legislatively authorized inference does not obviate the necessity of a determination by the trier of fact that the totality of evidence in the case, including such inferences, must constitute proof beyond a reasonable doubt [and] * * * [t]he trier of fact, judge or jury, is free to accept or reject the inference in each case"). The trial justice's instruction here effectively served to circumvent the state's required burden of proof on the element of force and coercion required by §§ 11–37–2 and 11–37–3 in counts 1 and 2, respectively. Thus, the instruction rendered nugatory the jury's ability to accept or reject the inference of force and coercion. Therefore, we hold that the instruction was error.

After careful review of the record, we conclude that the defendant's additional claims of error in respect to the jury instructions are without merit.

**Conclusion**

In conclusion, for the foregoing reasons, we deny and dismiss the defendant's appeal with respect to count 5 and count 8 of the indictment and affirm the judgments of conviction entered on those counts. We sustain the defendant's appeal, however, on the remaining seven counts and vacate the judgments of conviction entered on those counts.

The papers in this case may be returned to the Superior Court for further proceedings in accordance with this opinion.

APPENDIX

STATE OF RHODE ISLAND

SUPERIOR COURT

KENT, SC.

STATE OF RHODE ISLAND

V.

GLENN A. SALUTER

K1/94-0141A

STATE'S RESPONSE TO DEFENDANT'S

MOTION FOR A BILL OF PARTICULARS

Now comes the State of Rhode Island in the above–captioned matter in response to Defendant's Motion for a Bill of Particulars. The State answers as follows:

Count 1. The precise dates and times on and in which the activities are alleged to have occurred are not known to the State. The activities are alleged to have occurred at the apartments in West Warwick in which the complainant resided, and at which defendant shared residence from April 1, 1984 through and including June 24, 1985. The addresses are [ ] in West Warwick. The allegations are that defendant committed cunnilingus on the complainant more than once, and with a frequency of approximately more than once per week during the period.

Count 2. The State's answer with respect to dates, times, and places is the same as Count 1. The allegations are that defendant inserted his finger or fingers into the vagina of the complainant more than once, and with a frequency of "quite a few times per week" during the period alleged in the indictment.

Count 3. The precise dates and times the activities are alleged to have occurred are unknown to the State. The activities are alleged to have occurred at the apartments in West Warwick in which complainant resided,

 

and at which defendant shared residence from June 25, 1985 through and including December 31, 1986. The addresses are [ ] in West Warwick. The allegations are that defendant committed cunnilingus on the complainant more than once, and with a frequency of approximately more than once per week during the period.

Count 4. The State's answer with respect to dates, times, and places is the same as Count 3. The allegations are that defendant inserted his finger or fingers into the vagina of the complainant more than once, and with a frequency of "quite a few times per week" during the period.

Count 5. The precise date and time for the activity alleged is not known to the State. The State alleges that at an unknown point from October 1, 1986 through and including December 25, 1986, the defendant penetrated the vagina of the complainant with his penis in the bedroom of the [ ] apartment in West Warwick at which complainant resided with her mother.

Count 6. The precise dates and times for the activities alleged are not known to the State. The State alleges that on unknown dates and times from June 25, 1985 through and including December 31, 1985, the defendant had sexual contact with the complainant's breasts with his hands more than once.

Count 7. The precise dates and times for the activities alleged are not known to the State. The State alleges that on unknown dates and times from June 25, 1986 through and including December 31, 1986, the defendant had sexual contact with the complainant when her hand touched his penis to masturbate him at the West Warwick apartments at which complainant resided during the period.

Count 8. The precise date and time are not known to the State. The State alleges that at an unknown point from April 1, 1987 through and including April 30, 1987, that defendant's penis entered the complainant's mouth in his vehicle at or near Bradford, Rhode Island.

Count 9. The precise dates and times for the activities alleged are not known to the State. The State alleges that on unknown

dates and times from June 25, 1985 through and including December 31, 1986, the defendant had sexual contact with the complainant's breasts with a vibrator at the complainant's West Warwick apartments.

Respectfully submitted,
STATE OF RHODE ISLAND
JEFFREY B. PINE
ATTORNEY GENERAL
By:_____
ASSISTANT ATTORNEY GEN.

CERTIFICATION

I hearby certify that a copy of the within was hand delivered to Peter A. DiBiase at 222 Quaker Lane, Warwick, RI 02886 on June 9, 1994.