[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
John Pierce, now serving a sentence at the Adult Correctional Institutions for convictions on five counts of sexual assault, brings this petition pursuant to G.L. 1956 § 10-9.1-1 for post-conviction relief. As the judge who presided over Mr. Pierce's trial was no longer a member of the Rhode Island Superior Court when the instant petition was filed, the matter was considered by me pursuant to Rule 2.3 of the Superior Court Rules of Practice, in light of my assignment to preside over the Formal and Special Cause Calendar.
Mr. Pierce's claim for relief from convictions on Counts 3, 4, and 5, charging him with two counts of first degree sexual assault in violation of G.L. 1956 §§ 11-37-2 and 11-37-3, and one count of second degree sexual assault in violation of G.L. 1956 §§ 11-37-4 and 11-37-5, is grounded in his assertion that the trial justice improperly instructed the jury on the element of force and coercion, and in so doing, took the decision on a material element of the crimes charged away from the jury. The State counters by saying that the Petitioner, through his attorney, did not interpose a proper objection to the instruction he now asserts was constitutionally defective. And to this, the Petitioner replies that though his attorney advanced some criticism to the charge, both the trial justice and defense counsel agreed that the language of the instruction was drawn verbatim from a controlling Rhode Island Supreme Court that defined force and coercion in sexual assault matters.
For the reasons set forth below, Petitioner's assertion that the charge given to the jury unconstitutionally withdrew from them the consideration of each and every element of each count lodged against him is well taken, and his petition is allowed. His additional claim of duplicitiousness involving Counts 3, 4 and 5, as well as Counts 1 and 7, is rejected.
To understand the legal context in which this matter comes before the Court, a time-line of relevant components of the Rhode Island Supreme Court's jurisprudence regarding instructions to be given jurors about the State's burden of proof and the elements of crimes charged is necessary:
 1. In 1988, the Rhode Island Supreme Court had occasion to define force and coercion as those terms are employed in sexual assault statutes. Our Court said: "We agree with the position taken by the Supreme Court of Pennsylvania when it addressed the definition of force, coercion, or compulsion as used in sexual-assault statutes." The Supreme Court of Rhode Island proceeded to quote directly and approvingly from Commonwealth v. Rhodes, 510 PA. 537, 557, 510 A.2d 1217, 1227 (1986):
 `There is an element of forcible compulsion, or the threat of forcible compulsion that would prevent resistance by a person of reasonable resolution, inherent in the situation in which an adult who is with a child who is younger, smaller, less psychologically and emotionally mature, and less sophisticated than the adult, instructs the child to submit to the performance of sexual acts. This is especially so where the child knows and trusts the adult. In such cases forcible compulsion or the threat of forcible compulsion derives from the respective capacities of the child and the adult sufficient to induce the child to submit to the wishes of the adult . . . without the use of physical force or violence or the explicit threat of physical force or violence.' State v. St. Amant, 536 A.2d 897, 900-01 (R.I. 1988);
 2. After two mistrials, Petitioner Pierce stood trial a third time and was convicted on the counts that are now under examination. When instructing the jury at his trial in 1994, the trial justice expressly acknowledged to the jury that he was quoting from St. Amant on the issue of force and coercion and proceeded to read to the jurors verbatim the language from St. Amant that was in turn derived from Commonwealth v. Rhodes;
 3. Petitioner Pierce was sentenced on July 1, 1994, and though his initial sentence was partially abated through an appeal to this Court and a later remand to the Superior Court followed by some Rule 48A action by the Attorney General, Pierce remains incarcerated on an aggregate 30-year sentence;
 4. In 1998, the Rhode Island Supreme Court revisited the issue of forceand-coercion instructions regarding sexual assault cases and concluded that an instruction that, in effect, begins and ends with the Rhodes-St. Amant language is legally defective because it takes a key element away from the jury. In State v. Saluter, 715 A.2d 1250 (R.I. 1998), the Court examined the instruction of a trial justice that used the Rhodes-St. Amant language. Said our Supreme Court:
 The trial justice's instruction . . . effectively served to circumvent the State's required burden of proof on the element of force and coercion required by sections 11-37-2 and 11-37-3 . . . thus, the instruction rendered nugatory the jury's ability to accept or reject the inference of force and coercion. Therefore, we hold that the instruction was error. 715 A.2d at 1259.
 5. Petitioner Pierce now points to State v. Saluter, supra, and other authorities in support of his position that the instruction given at his trial on force and coercion was flawed and denied him his due process right "that the State must prove each element of a criminal offense beyond a reasonable doubt." 715 A.2d at 1259.
When Pierce went to trial in 1994, he was represented by a seasoned criminal defense attorney, Robert Mann, Esq., and his trial was presided over by an experienced judge, Mr. Justice Bourcier. As St. Amant had been decided in 1988, only six years earlier, both defense counsel and the trial judge followed what was the clear precedent in that case. Indeed, in instructing the jury on the question of force and coercion, Mr. Justice Bourcier read from St. Amant verbatim and referenced the case in his instructions. Given the date and nature of Pierce's trial, neither defense counsel nor the trial judge was required to possess the prescience or temerity to challenge or to significantly modify the charge on force and coercion as articulated in St. Amant. Surely, neither defense counsel nor the trial judge could forecast the later developments and explanations of State v. Saluter, 715 A.2d 1250 (R.I. 1998).
While both the Petitioner and the State have favored the Court with discussions regarding the retroactive applicability of Saluter, any examination of that issue must be placed against the backdrop of United State Supreme Court pronouncements regarding the constitutional centrality of the requirement that no one shall be convicted of a crime unless the government has proved each and every element of the crime charged beyond a reasonable doubt. In Sullivan v. Louisiana, 508 U.S. 275
(1993), the Supreme Court re-emphasized that a defective instruction relative to proof beyond a reasonable doubt was an error infecting the structure of the trial and thus could never be considered "harmless." In effect, such a structural fault within the trial — unlike errors that are not structural and "which may therefore be quantitatively assessed in the context of other evidence presented" — deprives the defendant of his right to trial by jury. Sullivan, supra, at 281-282 (citing Arizona v.Fulminante, 499 U.S. 279, 307-308 (1991)).
The principle that a jury — and only the jury — must measure each element of each crime charged against the government's burden of proof was further developed in United States v. Gaudin, 515 U.S. 506 (1995). Gaudin had been charged on "multiple counts of making false statements on federal loan documents"; but at his trial, the judge expressly withdrew from the jury the question as to whether Gaudin's "alleged false statements were material. . . ." 515 U.S. at 508. Writing for the Court, Mr. Justice Scalia observed:
 Thus far, the resolution of the question before us seems simple. The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; respondent therefore has a right to have the jury decide materiality. 515 U.S. at 511.
The Supreme Court went on to reject all the government's arguments that the trial justice had acted properly; and it held, among other things, that the question of materiality was not a question of law to be determined by the judge. 515 U.S. at 512-15. While it may have been possible for the government in Gaudin to make a good faith argument that "materiality" is a legal issue, by no stretch of the imagination can questions of "force and coercion" be considered as anything but factual issues. Either a defendant used force and coercion or he did not; and the government is obliged to prove that he used force and coercion, in addition to proving the other elements of the crime, in order to obtain a conviction.
In the instant matter, the instruction to the jury read from the St.Amant quote of Commonwealth v. Rhodes, supra, described a presumption declaring, in so many words, that force and coercion could be inferred by the jury from the simple fact of an adult-child relationship, given obvious discrepancies of age, size, sophistication and the like, not to mention a situation "where the child knows and trusts the adult." St.Amant, supra, at 900. But the flaw is not that the trial justice described a presumption: the fatal defect is that the description of force and coercion was presented as a mandatory presumption, and the jury was denied its opportunity and responsibility to determine the predicate facts and then make an independent determination as to whether the State had proved the element of force and coercion beyond a reasonable doubt. "When a jury is instructed to presume malice from predicate facts, it still must find the existence of those facts beyond a reasonable doubt."Sullivan, supra, 508 U.S. at 280-281 (citing Rose v. Clark, 478 U.S. 570,580 (1986)).
Presumptions exist relative to any number of crimes, but the United States Supreme Court instructed in Sandstrom v. Montana, 442 U.S. 510
(1979) that jurors must be carefully instructed on what to do with them so that the burden of persuasion will not be shifted from the state to the defendant:
 [the jury was] not told that the presumption could be rebutted . . . by the defendant's simple presentation of `some' evidence; nor even that it could be rebutted at all. . . . And given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways. . . . 442 U.S. at 517.
The Rhode Island Supreme Court did not reference Sandstrom v. Montana
in State v. Saluter, but it reached the same conclusion when it held that the so-called St. Amant instruction, employed by the trial judges in Saluter's case and also that of Mr. Pierce, improperly withdrew from the jury consideration of an element of the crimes charges. Put another way, the St. Amant instruction, without further explanation to the jurors regarding their responsibilities and the government's obligation to prove each element of each crime charged, was fatally defective:
 The trial justice's instruction here effectively served to circumvent the state's required burden of proof on the element of force and coercion required by §§ 11-37-2 and 11-37-3 in counts 1 and 2, respectively. Thus, the instruction rendered nugatory the jury's ability to accept or reject the inference of force and coercion. Therefore, we hold that the instruction was error. State v. Saluter, supra, 715 A.2d at 1259 (emphasis supplied).
Because in the jurisprudence of the United States Supreme Court, the failure of a trial justice — whether acting inadvertently or with benign intent — to allow the jury to evaluate all elements of the crimes charged can never be harmless error, the petition of Pierce must prevail. AndSaluter in our jurisdiction also leads to this conclusion. In the opinion of this Court, even if Saluter had never pursued his appeal and received a favorable decision from the Rhode Island Supreme Court, Pierce would still prevail in light of the controlling United States Supreme Court precedent. The constitutional demand that the jury measure the State's burden of proof against every element of each crime charged is so central to constitutional due process, the failure to so instruct the jury can never be harmless error; and any conviction that is based on an incomplete examination of the criminal accusations so far as their constitutive elements are concerned cannot stand. That is surely true here where both defense counsel and the trial justice reasonably believed the charge comported with recently enunciated precedent. As this is undisputed, "raise or waive" does not influence the outcome; but because this issue has been discussed, it is appropriate to address it.
In State v. McGehearty, 394 A.2d 1348 (R.I. 1978), our Supreme Court formulated a test to determine whether the failure to comply with a procedural requirement — such as failing to properly object at trial or to raise an issue on appeal — precludes later appellate review. McGehearty
said that the Court would examine the record to ensure that the failure to comply with the procedural requirement was not a "deliberate bypass," or that it did not constitute "sandbagging"; moreover, the Court would scrutinize the record to determine if the "breach complained of will constitute something more then harmless error." McGehearty, supra, at 1352. Here, all the McGehearty criteria were met. There is no suggestion that defense counsel was trying to sandbag the prosecution or bypass established procedures; and, as discussed above, the failure of the jury to be given the element of force and coercion as one for them to resolve is clearly more than "a harmless error."
It may be fairly argued that the McGehearty teaching was modified somewhat by the subsequent decisions of State v. Reis, 430 A.2d 749
(R.I. 1981) and State v. Burke, 522 A.2d 725 (R.I. 1987). The Supreme Court observed in Burke that in each case in which the Court had dispensed with the "raise or waive" rule it had been confronted with a "novel rule of law of which counsel could not reasonably have known at the time of trial." Burke, supra, at 731. With Burke in mind, the question becomes whether Saluter created a "novel rule of law," and to answer this we derive guidance from Pailin v. Vose, 603 A.2d 738 (R.I. 1992). In Pailin, we learned that a new rule of law is defined as one that "breaks new ground or imposes a new obligation on the States or Federal Government" or that is "not dictated by precedent existing at the time the defendant's conviction became final." Pailin, supra, at 741 (quoting Teague v. Lane, 489 U.S. 288, 301 (1989)).
For the purposes of this petition, Saluter did not break any new ground or impose any new obligation on the State because it has always been the government's obligation to prove each element of a crime beyond a reasonable doubt; but, it surely announced a new rule of law that improved the fact-finding procedures at trial. In short, Saluter
"`alter[ed] our understanding of the bedrock procedural element's essential to the fairness of a proceeding.'" Pailin, supra, at 741 (citing Sawyer v. Smith, 497 U.S. 227, 241-42 (1990)). Saluter, unlikeSt. Amant or any other case that had preceded it, announced a watershed rule necessary to the fundamental fairness of a criminal proceeding involving sexual assault, namely, that instructions which remove the element of force and coercion from the jury's deliberations are constitutionally impermissible and render void guilty verdicts resulting in such circumstances.
In his various memoranda submitted in support of his petition, Pierce argues that the trial record is devoid of any evidence that would permit a reasonable jury to conclude that force or coercion was used by him against the complaining witness. I need not address that contention because the doctrinal pronouncements of both the United States Supreme Court in the cases referenced above, as well as the Rhode Island Supreme Court in Saluter, make it clear that the failure of a trial judge to appropriately instruct the jury that they must evaluate all elements of the criminal charge and that their failure to be so instructed is fatal. It is not for a court later considering a post-conviction application in this matter to explore what the outcome would have been had the jury been properly instructed or whether the evidence against the defendant was so overwhelming that a proper instruction would not have changed the result. As Sullivan v. Louisiana, supra, instructed, instructions of the type that were employed in Saluter's case — and now in Pierce's — can never constitute error that is simply harmless.
Accordingly, the post-conviction relief application is granted regarding Mr. Pierce's convictions on Counts 3, 4 and 5; his convictions and sentences imposed on those counts are set aside.
Petitioner also seeks relief on claims that various combinations of the counts lodged against him are unlawful through the flaw of duplicitiousness. The record does not supply a basis for this claim, nor are any of Petitioner's arguments persuasive. The Petitioner prior to trial availed himself of a bill of particulars in order to gather information about the times and locations of the criminal activity with which he was charged. While the State's answers supplied timeframes, rather than specific dates, regarding different types of unlawful sexual activity directed at the complaining witness, this method of approximation is legally sufficient, and the Rhode Island Supreme Court has so held. Moreover, the date of a sexual assault is not an element the State is required to prove. See e.g., State v. Silvia, 798 A.2d 419, 426
(R.I. 2002) and State v. Brown, 619 A.2d 828, 832 (R.I. 1993). It is also clear from the trial transcript that defense counsel was afforded considerable latitude on cross-examination to explore with the complaining witness dates, times, locations, and circumstances regarding the different and disparate instances she was complaining of.
In sum, I cannot discern from the record or pleadings filed in this case any fatal defects attributable to duplicitiousness that can be remedied at this point in time. Duplicitiousness — if indeed there was any — should have been addressed at the time of trial; and nothing has been called to my attention that would warrant an inquiry more extensive then the one I have just undertaken. For this reason, the duplicitiousness complaints of the Petitioner are rejected.