STATE

v.

**Manuel DaSILVA.**

No. 97–553–C.A.

Supreme Court of Rhode Island.

Dec. 2, 1999.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Janice Weisfield, Paula Rosin, Providence, Stephen P. Nugent, Barrington, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## O P I N I O N

GOLDBERG, Justice.

This case came before the Court on November 8, 1999, on the appeal of the defendant from a judgment of conviction following a jury trial involving ten counts of child molestation sexual assault. The facts pertinent to this appeal are as follows.

On July 8, 1994, the defendant was charged by indictment with six counts of first-degree child molestation sexual assault in violation of G.L.1956 § 11–37–8.1, and seven counts of second-degree child molestation sexual assault in violation of § 11–37–8.3. The indictment charged offenses that were alleged to have occurred between October 15, 1986, and June 30, 1993. The complaining witness, whom we shall call Maria,[1] was the step-granddaughter of the defendant, with whom the defendant lived for the entire period circumscribed by the indictment. Maria, who was born October 15, 1981, was under fourteen years of age at all times pertinent to this appeal.

1. We have removed victim-identifying information, namely the victim's name and the addresses where the offenses have occurred, to protect the victim from further exposure.

In August 1994 the defendant moved for a bill of particulars pursuant to Rule 7(f) of the Superior Court Rules of Criminal Procedure. In its answer, the state maintained that the defendant in each of the thirteen counts committed various acts of sexual abuse between certain specific dates. For example, count 1 reads, "The defendant is charged with vaginal intercourse with [Maria] at * * * Street, East Providence. Between the dates 10/15/88–10/15/89." A jury trial commenced on September 23, 1996. At the close of the state's case, the trial justice granted the defendant's motion for judgment of acquittal on counts 2 (first degree), 11 (second degree), and 12 (second degree). On October 1, 1996, the remaining counts were submitted to the jury. Guilty verdicts on all ten counts were returned the next day. The defendant's motion for a new trial was heard and denied on November 1, 1996.

The defendant was subsequently sentenced to concurrent terms of life imprisonment on four counts of first-degree child molestation sexual assault; to concurrent terms of thirty years in prison on five counts of second-degree child molestation sexual assault; and to a consecutive term of life imprisonment on the remaining count of first-degree child molestation sexual assault. The defendant has appealed, and raises two issues. First, he argues that the trial justice erred in denying the defendant's motion to pass the case after a juror disclosed that she was unable to fully participate in the jury deliberations. Second, the defendant argues that the trial justice erred in denying his motion for a judgment of acquittal and/or motion for a new trial on counts 3, 4, 5, 6, 8, and 9, on the ground that these counts are duplicitous and violative of his rights to a unanimous verdict, to appropriate sentencing, and to protection against double jeopardy in a subsequent prosecution.

*See State v. Saluter,* 715 A.2d 1250, 1251 n. 1 (R.I.1998) (citing *Providence Journal Co. v. Rodgers,* 711 A.2d 1131 (R.I.1998)).

## I

### Motion to Pass

Shortly before noon on October 1, 1996, the trial justice concluded his instructions to the jury, the two alternate jurors were excused, and the jury commenced its deliberations. At approximately four o'clock that afternoon, the trial justice received a written communication from the jury foreperson that requested clarifications about the requirement of unanimity in returning a verdict. After instructing the jurors that they all had "to be in agreement," and that "[i]ts got to be all twelve," the trial justice further stated that

> "all of you, both those who may be in the majority right now, as well as in the minority, should try to have an open mind, open to your fellow jurors, ask yourself why are the others saying what they are saying, and what's the basis for what I believe at this juncture. So remain open. Don't be inflexible. Don't be afraid to change your mind."

As the jury was filing out of the courtroom, juror #189 pulled the sheriff aside and indicated that she wanted to see the judge. In chambers, in the presence of defense counsel and the prosecutor, the following exchange took place between the trial justice and the juror:

"THE COURT: Okay, go ahead.

"JUROR: I just want to be honest.

"THE COURT: Okay.

"JUROR: I had a call last night about my granddaughter.

"THE COURT: Uh-huh.

"JUROR: She's only three years old, but I just had myself—I'm going to be honest with this. What's happening with her, we don't know for sure, but—

"THE COURT: You think that—you've heard that maybe she's been molested?

"JUROR: Yes. DCYF has come into it. The only thing I want to clear is that, if I ever broke down, you know, before we come to the deliberation, I don't want you to think it was anything to do with the outside, you know what I mean, with the Court, you know, with the hearing and everything. It's just that I wanted to make myself clear that I have a situation at home, and you have—like you said, you don't want to know anything about this. I just want to—

"THE COURT: Okay.

"JUROR:—to clear myself about that. It's kind of—awful hard to be upstairs talking to these people, but—

"THE COURT: Okay. I think—I'm sure everybody in this room, myself and the lawyers, I'm sure the stenographer, of course, has to keep her job going, our hearts go out to you in this trial try to deal with it as best you can and the best to get to the bottom of it. But can you still sit here and get through these next few hours, or however long it takes, and not have your outside concerns?

"JUROR: Oh, no, it won't—this is another thing I want to say. I couldn't open up to them upstairs. There was a lot of things I wanted to stay [sic] upstairs that wasn't mentioned. It was overlooked that I wish that—you know.

"THE COURT: Okay. Well, we don't want to get into that. I mean, upstairs, your conscience is your guide. You can say what you want up there, or not say what you want. I can't tell you.

"JUROR: Right. No, I understand.

"THE COURT: What to do in your deliberation is totally apart from me and my role, and totally apart from these lawyers. But we certainly are grateful for your candid approach to this in a difficult time of being so conscientious about your responsibilities, okay? So I'll have you go back upstairs, okay?

"JUROR: Thank you."

Following this exchange, defense counsel immediately requested a mistrial based upon that juror's disclosure. The trial justice stated that he was "disinclined to grant a mistrial based upon this juror's declaration," and that, since the day was coming to an end, the ruling on the motion

would be deferred for "greater colloquy" the next day. The following day, defense counsel again requested that the court declare a mistrial, or alternatively, that further examination of the juror take place to make sure that she could remain fair and impartial and decide the case solely on the evidence presented during the trial. The trial justice denied the motion for mistrial, finding that the juror stated to his satisfaction "that she could deliberate in this case, focusing on the matter at hand, meaning this case and what had gone on during this trial, and not let this outside situation, however upsetting, have an impact on her vote as a juror on these charges." That same day, the jury returned a verdict of guilty. The defendant argues that the trial justice erred in denying the motion to pass, or at least erred in not inquiring further of the juror. We agree and conclude on the basis of this record, the trial justice, although satisfied in his own mind, erred in not allowing further inquiry of the juror to clearly establish that she was able to render a verdict unaffected by her personal situation.

 "It is well settled that a decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Suero*, 721 A.2d 426, 429 (R.I.1998). Therefore, the determination of the trial justice to pass a case or to refuse to pass a case is accorded great deference and will not be disturbed on appeal unless it is shown to be clearly wrong. *See id.* Additionally, "the issue of whether a juror is disqualified due to bias, prejudice or interest is left to the discretion of the trial justice." *State v. Berberian*, 118 R.I. 413, 419, 374 A.2d 778, 781 (1977). The decision to conduct voir dire, like the declaration of a mistrial, is also left to the trial justice's discretion, and that decision will not be disturbed unless an abuse of discretion is shown.

 However, it is well settled that when questions concerning a juror's fitness are raised, the trial justice must conduct sufficient inquiry to make a reasoned determination whether the juror should be discharged or may continue to serve. The Sixth Amendment requires "diligent scrutiny" to protect the defendant's right to a trial by a fair and impartial jury. *Artisst v. United States*, 554 A.2d 327, 331 (D.C.App.1989). When a juror affirmatively swears that he or she can decide the case based solely on the evidence presented, uncompromised by outside influence, a court may accept that representation and permit the juror to serve. *State v. Williams*, 220 Conn. 385, 599 A.2d 1053, 1056 (1991) (citing *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)).

In this case, the trial justice stated that he was satisfied that, based upon the statements made by the juror, there was no need for further inquiry by either himself or counsel. We disagree, and conclude that the statements made by the juror, when viewed in the context of a sterile transcript, convey an indication that the matter involving the juror's grandchild and DCYF was having an impact upon the juror's state of mind and was having a chilling effect upon her participation in the deliberations, as evidenced by her statement that she "couldn't open up to them upstairs." The juror said enough to raise an immediate concern necessitating further inquiry, and the unfortunate failure to do so by the trial justice resulted in a violation of the defendant's right to an impartial jury determination of his guilt.

Earlier this term in *State v. Tracy*, 741 A.2d 281 (R.I.1999) (Order), a case similar to the case at bar, we determined that "the trial justice was not sufficiently informed of the issue to adequately exercise his discretion" in deciding not to allow voir dire of a juror, and for that reason, the defendant's conviction for second-degree child molestation was reversed. In *Tracy*, the trial justice received a note from the jury foreperson during deliberations which informed the court that a juror had disclosed that a complaint had been brought alleging that the juror's grandchild had

been sexually abused. Defense counsel sought to conduct a voir dire of the juror to further inquire whether the juror felt he could be fair and impartial in the course of deliberations. The trial justice refused to allow any voir dire and sent further written instructions to the jury directing it to decide the case strictly upon the evidence presented at trial, and not on personal experience. We concluded that "the juror's disclosure raised a meaningful issue which could not be ignored or handled by additional instructions to the jury," and that voir dire was necessary to determine whether the juror could be fair and impartial in rendering the verdict.

Based on *Tracy*, we conclude that the disclosure by the juror in this case was significant enough to warrant further inquiry by the court. The record is devoid of any affirmative statement by the juror that she would be able to remain fair and impartial in her deliberations unfettered by any outside influence. Her statement of "Oh, no, I won't" is ambiguous as to whether she meant she would not let her outside concerns affect her deliberations or whether she would not be able to deliberate because of her outside concerns. Further, the timing of the disclosure that she could not "open up to them upstairs" immediately after the judge's charge to the jury to "try to have an open mind, open up to your fellow jurors" raises questions that should have been clarified by further inquiry by the trial justice or by counsel. Without further inquiry, the trial justice was not sufficiently informed of the issue to adequately exercise his discretion. Therefore, we conclude that the trial justice was clearly wrong in refusing to inquire further of the juror to establish that she could continue the deliberations unaffected by any outside influence.

## II

### Motions for Judgment of Acquittal and New Trial

At the close of evidence and again at the motion for a new trial, the defendant ar-gued that in charging all five counts of second-degree child molestation sexual assault (counts 3, 4, 5, 6, and 9), the indictment "uses the disfavored 'days and dates' language," and that the bill of particulars may be read as alleging numerous acts of second-degree sexual assault within specific times. For these reasons, he claims that in addition to the vague testimony by Maria about numerous touchings, it is impossible to know what one specific touching the grand jury charged on each count and whether the jury unanimously convicted the defendant of that offense. With regard to count 8, first-degree child molestation sexual assault, the defendant maintains that the indictment charged that the acts occurred "on a day and dates between the 15th day of October, 1990, and the 15th day of October, 1991, the exact days and dates unknown to grand jurors," and that the bill of particulars does not make it unambiguously clear that count 8 charges only a single crime. He argues that the bill of particulars is susceptible of an interpretation that it charges more than one act of intercourse during that time span. Further, he alleges that neither the indictment nor the bill of particulars makes clear that count 8 charges but a single offense. Accordingly, he argues, the conviction on those six counts cannot stand, and that the trial justice's denial of his motion for acquittal on those counts was clearly wrong.

When passing on a motion for a new trial, "[i]f the trial justice concludes that the verdict is a proper response to the evidence and the charge, or that it is one upon which reasonable minds might differ, the motion must be denied." *State v. Bettencourt*, 723 A.2d 1101, 1113 (R.I.1999). That ruling will not be disturbed on review unless the defendant can show that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *State v. Doctor*, 690 A.2d 321, 329 (R.I.1997). Further, Rule 33 of the Superior Court Rules of Criminal Procedure

prohibits the granting of a new trial upon error of law.

▆▆▆▆▆▆ Minimal due process requires that a defendant be afforded "adequate notice of the offense with which he is charged." *State v. Hendershot*, 415 A.2d 1047, 1048 (R.I.1980). A "person charg[ed] with a particular offense cannot be convicted of another and distinct offense even though the other is closely related or of the same general character." *In re Fiske*, 117 R.I. 454, 456, 367 A.2d 1069, 1071–72 (1977). The term "duplicity" refers to the joining of two or more offenses in a single count of an indictment. *See State v. Mollicone*, 654 A.2d 311, 321 (R.I.1995) ("Duplicity is defined in the criminal context as '[t]he joining in a single count of two or more distinct and separate offenses.'") (quoting Black's Law Dictionary 503 (6th ed.1990)). As we noted in *State v. Saluter*, 715 A.2d 1250 (R.I.1998), "the prohibition of duplicity is said to implicate a defendant's rights to notice of the charges against him, to a unanimous verdict, to appropriate sentencing and to protection against double jeopardy in a subsequent prosecution." *Id.* at 1253 (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir.1980)).

In arguing that the trial justice erred, the defendant relies on *Saluter*, an appeal from a conviction on all nine counts of child molestation sexual assault relating to offenses that occurred between April 1, 1984, and April 30, 1987. The indictment in that case used the "days and dates" language for each count, and the defendant was granted a bill of particulars to clarify the charges. In the bill of particulars, the state alleged that defendant committed the acts charged in seven of the counts on multiple occasions. For instance, count 1 stated that "[t]he precise dates and times on and in which the activities are alleged to have occurred are not known to the State. * * * The allegations are that defendant committed [sexual assault] on the complainant more than once, and with a frequency of approximately more than

once per week during the period." *Saluter*, 715 A.2d at 1259. In only two of the nine counts did the state allege a *single* incident of the conduct charged in the count. We decided that "an adequate bill of particulars could have—but did not—clarify the apparent ambiguity implicit in the language 'on a day and dates' in seven of the counts." *Id.* at 1254. Instead, we concluded that the bill of particulars "affirmed the duplicity" in the indictment for those seven counts, and for that reason, those counts failed. *Id.* Therefore, we vacated the convictions relative to those counts.

In the present case, the indictment used the "days and dates" language in charging the defendant with having sexual contact with Maria. The bill of particulars, however, provided specific dates "between" which the particular offense was alleged to have occurred, as did the verdict form. Additionally, the trial justice's instructions to the jury at the close of evidence clarified the time period element of the ten charges and specifically instructed the jury that it was to consider the evidence only as it relates to the ten remaining counts. He further charged that the jury may only consider evidence of any uncharged conduct as evidence of "a scheme or plan or design on the part of the defendant to engage in the criminal activity that was in fact charged." *See* Rule 404(b) of the Rhode Island Rules of Evidence.

▆▆▆▆▆ We conclude that the bill of particulars, together with the jury instructions and the verdict form, adequately clarified the counts before the jury and negated any potential duplicity in the indictment. Accordingly, we discern no error on the part of the trial justice in denying the defendant's motion for a judgment of acquittal or a new trial based upon claims of duplicity in the bill of particulars.

For the foregoing reasons we sustain the appeal, the judgment of conviction is vacated, and the papers in this case are

remanded to the Superior Court for a new trial.