**STATE**

v.

**Robert M. CHIELLINI.**

No. 98–409–C.A.

Supreme Court of Rhode Island.

Dec. 4, 2000.

---

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Susan B. Iannitelli, Robert Chiellini, Pro Se, for Defendant.

Present: WEISBERGER, C.J., LEDERBERG, BOURCIER, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

During an overnight recess in a murder trial—while the jury was deliberating the defendant's fate—a juror telephoned a lawyer she knew and questioned him about the difference between first-and second-degree murder. The attorney appropriately refused to respond to the juror's inquiry and cautioned her about the impropriety of the call. The next day, the attorney informed the trial justice about the conversation. After speaking with the lawyer and with the juror, the trial justice denied the defendant's pro se request for a mistrial. The jury then convicted him of first-degree murder.

On appeal, the defendant, Robert M. Chiellini (defendant), challenged the trial justice's denial of his motion for a mistrial.[1] He contended that he should receive a new trial because the trial justice failed to conduct a sufficient inquiry concerning the juror's communications with the attorney she had contacted during the jury's deliberations. Specifically, defendant argues that although the trial justice asked the juror about her conversation with the attorney, he never asked whether she had also sought or obtained legal advice from any other source, nor whether she had spoken with any of the other jurors about her conversation with the attorney. The defendant also asserted that the trial justice failed to conduct a sufficient inquiry of the other jurors to ascertain whether their colleague's contact with her attorney friend had prejudiced them.

The state also has filed an appeal in this case. In its appeal, the state contended that the trial justice erred in refusing to comply with G.L.1956 § 12–19–21, which requires the trial justice to impose an additional sentence upon finding a defendant to be a habitual criminal. The state contended that the trial justice was required by law to impose an additional consecutive sentence of at least some temporal duration when a defendant has been declared to be a habitual criminal and, based upon the plain language of the statute, the trial justice does not have the discretion to refuse to impose an additional sentence.

For the reasons set forth below, we deny Chiellini's appeal, grant the state's appeal, and remand this case to the Superior Court for resentencing in accordance with this opinion.

## Facts and Travel

The defendant was charged with and convicted of the October 29, 1995, brutal stabbing death of Nicole Benvie (Nicole). At the close of Chiellini's trial for Nicole's murder—after the trial justice had charged the jury—a question arose concerning the fitness of a particular juror to continue to participate in the jury's deliberations. During an overnight recess, one of the jurors had telephoned an acquaintance of hers, attorney Richard Gonnella (Gonnella),[2] asking him to explain the difference between first-degree and second-degree murder. Properly, Gonnella informed the juror that it would be inappropriate for him to discuss the case with her, and that her conduct in contacting him was a very serious matter. The following morning Gonnella immediately telephoned the trial justice and informed him of his conversation with the juror. Gonnella recited the conversation and assured the trial justice that he did not convey any information to this juror in response to her inquiry about the difference between first—and second-degree murder.

After speaking with Gonnella, the trial justice, in the presence of defense counsel and the prosecutor, called the juror into his chambers and questioned her on the record about her conversation with Gon-

1. Although the defendant asked the trial justice if he could have a new jury, we construe his request as a motion for a mistrial.

2. Mr. Gonnella has since been appointed to the bench and is a judge of the Rhode Island District Court.

nella, as well as her present state of mind. Following this inquiry, the trial justice asked Chiellini's attorney how he would like to proceed. The defendant's attorney responded that he felt confident that the juror was not tainted by her conversation with Gonnella and he therefore agreed to allow her to remain on the jury. Both defense counsel and the prosecution agreed that they had no desire to retry the case, that they were satisfied with the fitness of this juror to continue to participate in the jury's deliberations and that they wished to proceed to a verdict.

After determining that both sides were satisfied with the court's examination of the juror and that counsel wished to continue with the trial, the trial justice and the attorneys returned to open court, where they convened again in the absence of the jury. At this time, obviously displeased upon learning what had occurred in the trial justice's chambers, defendant made a *pro se* request for a "new jury." In effect, Chiellini asked the trial justice to pass the case because he believed the jury was confused, and that although the trial justice had instructed the jury not to discuss the case with anyone, a juror had done so. The trial justice assured Chiellini that if Gonnella had actually spoken to the juror about the law that governed the case, then he might be inclined to pass the case and grant a new trial. But the trial justice said that the fact that Gonnella refused to respond to the juror's inquiry quelled any of the court's concerns, and he denied Chiellini's motion.

At the conclusion of the trial, the jury convicted Chiellini of first-degree murder. At sentencing, the trial justice contemplated applying the habitual criminal statute, § 12–19–21, but he nonetheless declined to impose the requisite additional sentence. The trial justice based his refusal upon his interpretation of the legislative intent behind the "habitual criminal" statute. Although acknowledging that Chiellini was a habitual criminal, the trial justice stated that he "d[id]n't think the people who wrote the statute intended it to be used in this manner," rather, "the more reasonable use of that statute [would be in cases where the defendant was sentenced to] one year maximum, two years maximum, five years maximum, then give him a little extra for habitual."

## Analysis

### I

### Denial of a Mistrial Based Upon Juror Misconduct

■ Chiellini asserts that the trial justice failed to conduct an adequate inquiry of the juror who had contacted attorney Gonnella during the jury's deliberations to determine whether she had been prejudiced by her communication with this lawyer. Therefore, he argues, the trial justice erred in denying his motion for a new trial. "[A] decision to pass a case and declare a mistrial are matters left to the sound discretion of the trial justice." *State v. Da-Silva*, 742 A.2d 721, 725 (R.I.1999) (quoting *State v. Suero*, 721 A.2d 426, 429 (R.I. 1998)). A trial justice's decision to pass a case "will not be disturbed on appeal unless it is shown to be clearly wrong." *Da-Silva*, 742 A.2d at 725.

■ When faced with questions concerning the fitness of a juror to continue functioning in that capacity, a trial justice "must conduct sufficient inquiry to make a reasoned determination whether the juror should be discharged or may continue to serve." *Id.* Therefore, a trial justice has an affirmative duty to conduct an initial inquiry to determine whether the juror has been prejudiced by the encounter so as to render the juror unfit to continue to serve. Upon completion of this initial inquiry, the trial justice then must determine whether further inquiry of the juror or the entire jury is necessary to ensure that the juror and the other jurors have not been prejudiced and can continue to serve as fair and impartial fact-finders.

■ Failure of a trial justice to conduct such an inquiry results in a denial of

the defendant's right to an impartial jury. A trial justice cannot adequately exercise his or her discretion in deciding whether to grant a new trial or to pass a case if he or she does not make adequate inquiry concerning the juror's continued ability to serve as an impartial juror. Furthermore, "[t]he Sixth Amendment requires 'diligent scrutiny' to protect the defendant's right to a trial by a fair and impartial jury." *DaSilva*, 742 A.2d at 725 (quoting *Artisst v. United States*, 554 A.2d 327, 331 (D.C.App.1989)).

■ Here, the trial justice conducted a sufficient initial inquiry of this particular juror's conduct, especially in light of the fact that neither Chiellini nor his lawyer ever requested the court to make any further investigation. Our review of the record leads us to conclude that the trial justice spoke with attorney Gonnella and questioned the juror who contacted him before he reasonably determined that the juror was qualified to remain on the jury. Accordingly, we are satisfied that the trial justice exercised proper discretion in declining to pass the case.

Furthermore, the trial justice asked Chiellini's attorney how he wished to proceed and defendant's attorney responded, "I certainly don't believe that juror's been tainted." As a result, both the defense counsel and the prosecutor agreed that a mistrial was not warranted. Although defense counsel and the prosecutor were given an opportunity to raise objections or make suggestions concerning whether the trial justice should make any further inquiries, neither party did so. In fact, both attorneys expressed an intent to allow the juror to remain on the panel and to continue the trial with the jury intact.

Upon finding out what had happened in chambers, Chiellini addressed the court, stating, "I would like to have a new jury because you ordered them not to talk to anyone about my case and they have and

they're not sure." [3] The trial justice denied the motion, stating that "[h]ad the juror talked about the case with the individual that she called [he] might agree with [him], but the individual she called told her he can not talk about the case." Based upon his telephone conversation with Gonnella and his examination of the juror in the presence of the attorneys, the trial justice was satisfied that the juror could continue to participate in the deliberations unaffected by her conversation with attorney Gonnella and that he would not be abusing his discretion in denying defendant's motion to pass the case.

We note that at no time during the trial justice's inquiry of the wayward juror did either defense counsel or the prosecutor seek to ask any questions of the juror, nor did they ask the trial justice to put any further questions to her. Both parties allowed the trial justice to question the juror and neither objected to his questions or the manner in which he asked them. Specifically, neither attorney suggested that the juror be asked whether she had contacted anyone else or whether she had spoken with any other members of the jury about her conversation with attorney Gonnella. The trial justice evidently believed that he had performed a proper initial inquiry concerning the juror's fitness to serve and he did not find anything that would cause him to delve further.

Previously, we have held that if a juror, during the trial justice's inquiry, "raise[s] an immediate concern necessitating further inquiry * * * the unfortunate failure to do so by the trial justice result[s] in a violation of the defendant's right to an impartial jury determination of his guilt." *DaSilva*, 742 A.2d at 725. However, in this case the trial justice's investigation did not raise such a concern. The trial justice questioned the juror on the record with both defense counsel and the prosecutor

---

**3.** Representing himself *pro se* before this Court at oral argument, Chiellini contradicted this argument stating that he would have rather the juror stay confused because it may have resulted in a locked jury, thus giving him another trial.

present, and then asked defense counsel what he would like to do. To this question, Chiellini's attorney responded that in his opinion, the juror was not tainted. Moreover, both lawyers agreed that they had no desire to retry the case and that they wished to continue with the deliberations.

Based on our review of the record, the trial justice acted in a timely manner to determine the existence and the extent of the juror's communication with attorney Gonnella. As required, he questioned the juror on the record and accorded counsel an ample opportunity to object and to express their ideas about whether to proceed with any further inquiry. Neither defense counsel nor the prosecutor offered any objections or suggestions to the court, and neither objected to anything that the trial justice did or failed to do during this *in camera* proceeding. Accordingly, we conclude that the trial justice conducted a sufficient investigation into the fitness of this juror to continue to serve on the jury

and that the court did not abuse its discretion in denying Chiellini's request for "a new jury."

## II

### Sentencing of Habitual Offender

■ The state contended on its appeal that the sentencing justice committed reversible error by refusing to impose an additional sentence upon Chiellini after finding him to be a habitual criminal pursuant to § 12–19–21.[4] We agree.

Previously, we have not addressed whether a trial justice, pursuant to § 12–19–21, has the discretion to refuse to impose an additional sentence upon a criminal defendant after finding him or her to be a habitual criminal. But we long have followed the rule that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Humphrey*, 715 A.2d 1265, 1277 (R.I.

4. **General Laws 1956 § 12–19–21, "Habitual criminals,"** provides:

"(a) If any person who has been previously convicted in this or any other state of two or more felony offenses arising from separate and distinct incidents and sentenced on two or more such occasions to serve a term in prison shall, after the convictions and sentences, be convicted in this state of any offense punished by imprisonment for more than one year, such person shall be deemed an 'habitual criminal.' *Upon conviction, the person deemed a habitual criminal shall be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years,* in addition to any sentence imposed for the offense of which he or she was last convicted. No conviction and sentence for which the person has subsequently received a pardon granted on the ground that he or she was innocent, shall be considered a conviction and sentence for the purpose of determining whether the person is an habitual criminal.
(b) Whenever it appears a person shall be deemed an 'habitual criminal,' the attorney general, within forty-five (45) days of the arraignment, but in no case later than the date of the pretrial conference, may file with the court, a notice specifying that the

defendant, upon conviction, is subject to the imposition of an additional sentence in accordance with this section; provided, however, that in no case shall the fact that the defendant is alleged to be a habitual offender be an issue upon the trial of the defendant, nor shall it be disclosed to the jury. Upon any plea of guilty or nolo contendere or verdict or finding of guilty of the defendant, a hearing shall be held by the court sitting without a jury to determine whether the person so convicted is a habitual criminal. Notice shall be given to the defendant and the attorney general at least ten (10) days prior to the hearing. Duly authenticated copies of former judgments and commitments which comprise the two or more prior convictions and imprisonments required under this section shall be prima facie evidence of defendant's former convictions and imprisonments. If it appears by a preponderance of the evidence presented that the defendant is a habitual criminal under this section, he or she shall be sentenced by the court to an additional consecutive term of imprisonment of not exceeding twenty-five (25) years; and provided further, that the court shall order the defendant to serve a minimum number of years of the sentence before he or she becomes eligible for parole." (Emphasis added.)

1998) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I.1996)).

We need not engage in a long discussion about the interpretation of this statute. In its plain and unambiguous application, § 12–19–21 requires the trial justice to impose an additional period of incarceration upon a criminal defendant if he or she is found to be a habitual criminal. The actual length of the additional period, whether it be a matter of months or years—whether it is suspended or ordered to be served—up to the maximum of twenty-five added years is within the discretion of the trial justice. The unvarnished meaning of the statute requires the trial justice to impose some additional period of incarceration beyond the underlying term when sentencing a habitual criminal. Therefore, we conclude as a matter of law that the trial justice erred in not imposing an additional sentence upon Chiellini after finding him to be a habitual criminal under § 12–19–21.

Our reading of the statute reveals no provision that would allow a trial justice the discretion to fail to impose an additional period of incarceration upon a habitual criminal. Therefore, we hold, that upon finding Chiellini to be a habitual criminal the trial justice was obliged to sentence him to some additional period of incarceration, however long or short, whether suspended or not, but not to exceed twenty-five years. As we stated in *State v. Smith*, 602 A.2d 931, 938 (R.I.1992), "[t]he statutory language [of § 12–19–21] clearly articulates the plain and unambiguous meaning of the provision, that is, [up to] a twenty-five year enhancement shall be added 'in addition to any sentence imposed.'"

In this case, the trial justice declined to impose an additional sentence because he did not "think the people who wrote [the] statute intended it to be used in this manner." However, the statute directs that when a defendant is found to be a habitual criminal, he "*shall* be punished by imprisonment in the adult correctional institutions for a term not exceeding twenty-five (25) years." Section 12–19–21(a). (Emphasis added.) It is clear and unambiguous that the Legislature intended that, upon finding a defendant to be a habitual criminal, the trial justice is required to impose some additional sentence not in excess of twenty-five years. Also, this Court has "upheld a sentence of life without parole, consecutive to life without parole, consecutive to life, consecutive to twenty years—a sentence that similarly cannot possibly be served—but nevertheless remains constitutional." *Smith*, 602 A.2d at 938.

### Conclusion

For the foregoing reasons, we deny Chiellini's appeal and affirm the judgment of conviction. We also sustain the state's appeal, vacate the order declining to impose an additional sentence pursuant to § 12–19–21, and remand this case to the Superior Court for the resentencing of Chiellini in accordance with this opinion.

Justice FLANDERS did not attend the oral argument, but participated on the basis of the briefs.