**Supreme Court**

No. 2014-280-C.A.

(P2/11-86A)

State                           :

v.                              :

Ricardo Florez.                 :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                           :

v.                           :

Ricardo Florez.                     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  On March 31, 2014, a Providence County Superior Court jury found the defendant, Ricardo Florez (defendant or Florez), guilty of one count of second-degree child molestation sexual assault (sexual contact with a person fourteen years of age or under) in violation of G.L. 1956 §§ 11-37-8.3 and 11-37-8.4.  On July 29, 2014, the trial justice sentenced the defendant to twenty years' imprisonment, with eight years to serve and the remaining time suspended with probation.[1]  On appeal, the defendant asserts a variety of issues before this Court.  First, he contends that the trial justice erred in denying his motion for a new trial.  Next, he asserts that the trial justice's jury charge and verdict sheet were flawed in that they permitted the jury to return a non-unanimous guilty verdict.  Third, the defendant argues that the trial justice erred by allowing the state to improperly refresh the complainant's recollection.  Finally, he contends that the trial justice committed reversible error by declining to admit parts of the witness statement of the complainant's father into evidence.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1] In addition, defendant's sentence included a requirement to attend sex offender treatment program and to register as a sex offender upon release, and a no-contact order was entered with regard to the complainant.

# I

## Facts and Travel

The incident giving rise to defendant's conviction occurred on August 1, 2010 at a McDonald's restaurant in Pawtucket, Rhode Island. The defendant was subsequently charged by criminal information with engaging in sexual contact with a person fourteen years of age or under in violation of §§ 11-37-8.3 and 11-37-8.4. A two-day jury trial in Providence County Superior Court took place in March 2014.[2] We briefly sketch the facts that came to light at trial, and add more detail where necessary in our later discussion of defendant's specific claims.

On August 1, 2010, the complainant, Joshua; his father, Glenn;[3] and Joshua's nephew were on their way to a Pawtucket Red Sox game when they stopped at McDonald's in Pawtucket for lunch. While the other two went to the register to order food, Joshua sat at a booth and watched television. According to Joshua, defendant came over to him and "asked [him] questions about how old [he] was and where [he] was from and * * * if [he] had a girlfriend or not." Joshua testified that the conversation was one-sided, with defendant asking all of the questions, and that it lasted approximately ten minutes. He further testified that he was scared because he did not know defendant but did not want to be rude by not responding.

Joshua next testified that he got up from his seat and told his father that he was going to the bathroom. He recounted that he was washing his hands at the sink when "[t]he defendant came out [of the stall] with his pants down and came over to me and grabbed my unit." He further elaborated that defendant grabbed his penis over his clothing. He testified that defendant

---

[2] At trial, the state called three witnesses: the complainant, his father, and the detective who investigated the sexual assault, Det. Charles Devine (Det. Devine) of the Pawtucket Police Department. The defendant called one witness in his defense, Officer Scott Slack (Officer Slack), the officer who was dispatched to the scene on the day of the incident.

[3] We use pseudonyms for the complainant and his father to protect their privacy.

then let him walk out of the bathroom,[4] at which point he went to his father and told him what had happened. Joshua further recounted that the police arrived, he explained to them what had happened, and he provided a description of defendant. He further reported that he spoke to Det. Charles Devine (Det. Devine) of the Pawtucket Police Department on August 5, 2010, at which time he provided a statement and identified defendant from a photo array.

As part of his direct examination, Joshua was asked: "at any point in time before leaving the bathroom, did you ever touch any part of the defendant?" to which he answered, "No." As a result, the state handed Joshua the statement that he had provided to police. The state then asked Joshua if he "recall[ed] describing any other type of contact between [him] and the defendant that day in the bathroom in your statement to Detective Devine?" Again, Joshua answered, "No." After the state directed Joshua's attention to a specific portion of his witness statement, it asked, over defendant's continued objection, "Tell me what it is you told Detective Devine." Joshua answered, "That he grabbed my hand and made me touch his exposed penis." The state then asked if there was "some reason [he] didn't want to tell us that?" Joshua responded, "Um, I was just scared to tell you."

The state also called Glenn as a witness. He testified that, as he was ordering lunch, Joshua approached him and told him that he had to use the bathroom. He further testified that Joshua was still in the bathroom when he got back to the table with the food. According to Glenn's testimony, Joshua left the bathroom, came up to him, and told him "that man touched me;" and, when Glenn asked what he meant, Joshua replied "sexually." Glenn recounted that Joshua pointed to defendant when he walked out of the bathroom. Glenn testified that he

---

[4] Notably, on cross-examination Joshua testified that he was the first person to leave the bathroom; however, in the witness statement he gave to police, he stated that he followed defendant out of the bathroom.

approached defendant, but defendant replied that Joshua was lying. At that point, defendant "jumped on his bike and took off." Glenn called 911 and the police responded. Four days later, Glenn and his son went to the Pawtucket police station, where he provided a witness statement and identified defendant from a photo array.

## II

### Standard of Review

Given the variety of claims on appeal, our standard of review varies with respect to each of the different issues. In regard to the motion for a new trial, "this Court 'accord[s] great weight to a trial justice's ruling on [such a motion] if he or she has articulated sufficient reasoning in support of the ruling.'" State v. Kizekai, 19 A.3d 583, 589 (R.I. 2011) (quoting State v. Guerra, 12 A.3d 759, 766 (R.I. 2011)). "If the trial justice has articulated adequate grounds for denying the motion, his or her decision is entitled to great weight and will not be overturned by this Court unless he or she has overlooked or misconceived material evidence or was otherwise clearly wrong." State v. Bunnell, 47 A.3d 220, 233 (R.I. 2012) (quoting State v. Cipriano, 21 A.3d 408, 429 (R.I. 2011)).

As for our review of the jury instructions and the verdict form, we employ a de novo standard of review "in scrutinizing [them] regarding their constitutional or legal adequacy[.]" State v. Imbruglia, 913 A.2d 1022, 1031 (R.I. 2007). "[A]n erroneous charge warrants reversal only if it can be shown that the jury 'could have been misled' to the resultant prejudice of the complaining party." State v. Burnham, 58 A.3d 889, 897 (R.I. 2013) (quoting State v. Lynch, 19 A.3d 51, 58 (R.I. 2011)).

Finally, we review a trial justice's evidentiary rulings under an abuse of discretion rubric, and will not overturn a trial justice's decision with respect to evidentiary issues unless it

constitutes an abuse of that discretion and prejudices the complaining party. <u>State v. Pitts</u>, 990 A.2d 185, 189 (R.I. 2010); <u>State v. Pompey</u>, 934 A.2d 210, 215 (R.I. 2007). "We are disinclined to perceive an abuse of discretion so long as the record contains 'some grounds for supporting the trial justice's decision * * *.'" <u>Pitts</u>, 990 A.2d at 189-90 (quoting <u>State v. Grullon</u>, 984 A.2d 46, 53 (R.I. 2009)).

## III

## Discussion

## A

## Motion for a New Trial

The defendant first attacks the trial justice's denial of his motion for a new trial. Before reaching the merits of his contention, however, we must first confront a procedural hurdle. Rule 33 of the Superior Court Rules of Criminal Procedure provides that "[a] motion for a new trial based on any * * * grounds [other than newly discovered evidence] shall be made within ten (10) days after the verdict or finding of guilty or within such further time as the court may fix during the ten-day period." Importantly, we have held that "[t]he time limit set forth in Rule 33 is jurisdictional and cannot be waived." <u>State v. Champion</u>, 873 A.2d 92, 94 (R.I. 2005); <u>State v. Rodriguez</u>, 742 A.2d 728, 733 (R.I. 1999).

Here, the jury returned a verdict on Monday, March 31, 2014. Thus, the deadline for filing a motion for a new trial in accordance with Rule 33 was Thursday, April 10, 2014. However, defendant's attorney did not file the handwritten motion until the date of the hearing

on Monday, April 14, 2014.[5] As such, the motion for a new trial was untimely and should not have been considered by the trial justice, and, accordingly, is beyond our review on appeal.

To be sure, at the hearing, the trial justice considered whether the motion was filed in a timely manner. However, the state mistakenly represented that the deadline was April 14, 2014. Thus, the trial justice issued a warning that he "would suggest that [defendant] file it today." Even considering such a warning, however, we reiterate that "[t]he time limit set forth in Rule 33 is jurisdictional and cannot be waived." Champion, 873 A.2d at 94. Rule 33 specifically provides that any further time for filing a motion for a new trial must be fixed by the trial justice within the ten-day period. Accordingly, the fact that the parties and the trial justice mistakenly believed that the time to file such a motion had not lapsed is of no consequence. The motion was untimely and thus not properly before the trial justice.

Nevertheless, even if we were to consider defendant's argument with regard to his motion for a new trial, it is devoid of any merit. In essence, defendant's argument is that the trial justice erred by crediting Joshua's testimony in denying his motion for a new trial because (i) the trial justice specifically acknowledged certain shortcomings of Joshua's testimony; and (ii) the surveillance videotape from McDonald's contradicted Joshua's testimony with regard to whether Joshua or defendant exited the bathroom first.

"We accord great deference when we review the decision of a trial justice on a motion for new trial 'because a trial justice, being present during all phases of the trial, is in an especially good position to evaluate the facts and to judge the credibility of the witnesses.'" State v. Whitaker, 79 A.3d 795, 804 (R.I. 2013) (quoting State v. Rosario, 35 A.3d 938, 948 (R.I. 2012)).

---

[5] After the jury returned its verdict on March 31, 2014, defendant's counsel indicated that he "anticipate[d] filing a motion for new trial" and sought to schedule a hearing on the motion. At that time, the hearing was scheduled for April 7, 2014, but it did not actually occur until April 14, 2014.

In addition, "[w]e have repeatedly held that 'neither a witness's prior contradictory statements nor the inconsistencies in his testimony inhibit a fact finder's right to accept the witness as credible, and to pick and choose from his testimony what portions he deems worthy of belief.'" King v. Huntress, Inc., 94 A.3d 467, 495 (R.I. 2014) (quoting Russian v. Lipet, 103 R.I. 461, 464, 238 A.2d 369, 371 (1968)). While a trial justice "commits clear error when he or she completely overlooks testimony which is materially contradictory to the testimony on which the justice bases his or her determination[,]" id., that did not occur in this case. Indeed, the trial justice noted the inconsistencies in Joshua's testimony in excruciating detail and after "[h]aving acknowledged that his testimony was not perfect nor crystal clear," he found that "his difficulties in relating what happened to him * * * does not significantly erode the case built by the [s]tate." Viewing Joshua's testimony "through the lenses of a 13 year old, confronted with a situation that he was confronted with in that men's room," he specifically found the testimony "to be credible and trustworthy and sufficient to meet the elements of second degree sexual assault child molestation * * *." The trial justice undertook a detailed review of Joshua's testimony, acknowledged its shortcomings, but nevertheless found his testimony to be credible. After carefully reviewing the record before us, we conclude that, even if properly before us, the trial justice did not overlook or misconceive material evidence in denying defendant's motion for a new trial. See State v. Paola, 59 A.3d 99, 106 (R.I. 2013).

## B

### Jury Instructions and Verdict Sheet

The defendant's next attack sets its crosshairs at the jury instructions and verdict sheet, claiming that they permitted the jury to return a non-unanimous guilty verdict, thus running afoul of this Court's holding in State v. Saluter, 715 A.2d 1250, 1254-55 (R.I. 1998). Specifically,

defendant contends that the trial justice incorrectly applied Saluter when he instructed the jury and failed to specifically state that the jury was required to unanimously find that defendant committed one or the other of the alleged sexual contacts, or both. That is, according to defendant, the verdict was unclear because "there is a question in the present case as to whether the jury unanimously found that [defendant] touched [Joshua] over his clothing, whether the jury unanimously found that [defendant] forced [Joshua's] hand to touch his penis, or both, or whether the jury was split between the two allegations." In response, the state suggests that defendant failed to object below and, therefore, his claim on appeal should be deemed waived.

"The term 'duplicity' refers to the joining of two or more offenses, however numerous, in a single count of an indictment." Saluter, 715 A.2d at 1253. We have consistently held that "a motion to dismiss based on a duplicitous complaint is * * * an objection [based on a defect of the complaint]."[6] Id. at 1254 (quoting State v. LaPlante, 122 R.I. 446, 449, 409 A.2d 130, 131 (1979)); State v. Roberts, 420 A.2d 837, 840 (R.I. 1980) ("[T]he proper way to attack a duplicitous complaint, indictment, or information is by motion pursuant to Super. R. Crim. P. 12(b)(2), (3)."). Thus, by failing to file a motion to dismiss, defendant waived his claim of duplicity. See Saluter, 715 A.2d at 1254; Roberts, 420 A.2d at 840.

Having failed to avail himself of this procedural tool, defendant attempts to raise his duplicity claim by asserting error in the jury instructions and verdict form. This attempt fails because it falls squarely within this Court's "raise-or-waive" rule. In accordance with such rule, "a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court." State v. Bido, 941 A.2d 822, 829 (R.I. 2008). In the present matter, defendant

---

[6] We also note that an appropriate bill of particulars could have been used to cure any potential duplicity issue, see State v. DaSilva, 742 A.2d 721, 727 (R.I. 1999); however, defendant failed to file one.

failed to object to both the jury instructions[7] and the verdict form. In fact, not only did defendant not object at any point with regard to this issue, but, when the trial justice explained his plan to deal with a potential <u>Saluter</u> problem, defense counsel acquiesced in the trial justice's strategy to neutralize the issue.[8] Thus, defendant cannot now be heard to complain of the error. See <u>Bido</u>, 941 A.2d at 828-29.

We also note that the exception to the raise-or-waive rule is not available to defendant. It is well settled that our raise-or-waive rule generally "will not be disturbed unless 'basic constitutional rights are concerned.'" <u>Bido</u>, 941 A.2d at 829 (quoting <u>State v. Gomez</u>, 848 A.2d 221, 237 (R.I. 2004)). "[T]o fall within this exception, the defendant must show: (1) that the error complained of amounts to more than harmless error; (2) that a sufficient record exists to permit a determination of the issue; and (3) that 'counsel's failure to raise the issue [before trial] must be premised upon a novel rule of law that counsel could not reasonably have known during the trial.'" <u>Cronan ex rel. State v. Cronan</u>, 774 A.2d 866, 878 (R.I. 2001) (quoting <u>State v. Donato</u>, 592 A.2d 140, 142 (R.I. 1991)). Even assuming, <u>arguendo</u>, that the error complained of would constitute more than harmless error, the rule of law upon which this argument is premised

---

[7] Following the jury charge, defense counsel did state that "just for the record based on the earlier conference I would ask that my objection be noted to that one issue that we discussed earlier." However, the basis for defendant's objection is unclear from the record. Thus, even if this objection were in regard to duplicity, such an objection is not properly preserved for our review. See <u>State v. Fry</u>, 130 A.3d 812, 822 (R.I. 2016). Moreover, at oral argument, defense counsel speculated that such objection was not asserted with regard to duplicity, but, instead, may have been an exception to the trial justice's denial of an instruction on a lesser included offense.

[8] Specifically, prior to Joshua's anticipated testimony with respect to a second touching, defendant objected pursuant to Rule 404(b) of the Rhode Island Rules of Evidence, and the parties went off the record to discuss a possible limiting instruction. When the parties returned to the record, the trial justice noted a potential <u>Saluter</u> issue and stated his intention to "instruct the jury if they find either one of [the two] incidences [of touching] * * * and are convinced beyond a reasonable doubt of that, that is sufficient to convict on the one count." He then asked: "Is that how we are going to proceed, gentlemen?" and defense counsel replied, "Yes, your Honor."

is far from novel.[9]  Indeed, <u>Saluter</u> was decided by this Court in 1998, and we have, on several occasions, expounded upon the applicability of its holding.  <u>See</u> <u>State v. Davis</u>, 877 A.2d 642, 649 (R.I. 2005) (declining to apply our holding in <u>Saluter</u> where the "jury unanimously found the defendant guilty of two of the crimes charged, each of which constituted one offense charged in separate counts of the indictment"); <u>State v. DaSilva</u>, 742 A.2d 721, 727 (R.I. 1999) (declining to apply the <u>Saluter</u> rule where the "bill of particulars, together with the jury instructions and the verdict form, adequately clarified the counts before the jury and negated any potential duplicity in the indictment").  Accordingly, counsel could (and should) reasonably have known of the rule of law pronounced by this Court in <u>Saluter</u> at the time of trial, and, thus, the exception to the "raise-or-waive" rule is inapplicable.

The defendant presents two additional last-ditch arguments to attempt to save his claim.  First, he suggests that the fact that "the trial judge seemed to represent himself as the expert in the subject" should warrant an exception from the raise-or-waive rule.  We have never recognized such an exception and decline to do so today.  Second, defendant attempts to liken his case to <u>State v. Dennis</u>, 893 A.2d 250, 263 (R.I. 2006), to argue that we should find the same "circumstances peculiar" in that case and relax the raise-or-waive rule in the current instance.  There, however, we declined to deem the defendant's argument as waived "because of the trial justice's explicit statement that he would not give 'any instructions * * * regarding Miranda rights to [the] jury.'"  <u>Id.</u> at 264.  Such circumstances simply do not exist in the case before us.  Accordingly, we conclude that defendant's multiple attempts to bypass this Court's "raise-or-waive" rule are unavailing, and, thus, we do not consider his <u>Saluter</u> argument on appeal.

---

[9] Notably, defendant asks this Court to "revisit its present incarnation of the 'raise-or-waive' rule[,]" and, instead, adopt a framework similar to the four-principle test used by the First Circuit with regard to waiver.  <u>See</u> <u>United States v. Krynicki</u>, 689 F.2d 289 (1st Cir. 1982).  We decline to do so.

## C

### Joshua's Witness Statement

In his next assignment of error, defendant argues that the trial justice erred by improperly allowing the state to "refresh [Joshua's] recollection" of the second touching by using his witness statement. He contends that Joshua did not testify to a lack of memory, but, instead, testified that he omitted the second touching from his testimony because he was scared; thus, according to defendant, a proper foundation for refreshing Joshua's recollection had not been formed.

However, in ruling on defendant's objection to Joshua's anticipated testimony, the trial justice stated: "If he says no then he could impeach him with his own statement assuming that * * * statement is inconsistent or if he says I'm not sure I don't remember why can't he refresh his recollection with his own statement about something that he just can't recall on the stand." Although he does not cite to a specific Rule of Evidence by number, this ruling makes clear that, when Joshua answered that there had not been a second touching, the trial justice's reasoning for allowing use of the witness statement was based on a prior inconsistent statement under Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence. Pursuant to that rule, the prior statement (Joshua's witness statement) is admissible if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with the declarant's testimony[.]" Id. To admit a prior statement into evidence under Rule 801(d)(1)(A), "there must be two statements and each must be sufficiently inconsistent to render the prior statement admissible." State v. Jaiman, 850 A.2d 984, 988 (R.I. 2004) (quoting State v. Bettencourt, 723 A.2d 1101, 1111 (R.I. 1999)). "The determination of whether a pretrial statement is * * * inconsistent with the witness's in-court testimony is [within] the sound discretion of the trial justice." Id. (quoting Bettencourt, 723 A.2d at 1111). Notably, unlike the

federal rule concerning the substantive admissibility of prior inconsistent statements, "the inconsistent statement need not have been made while under oath subject to penalty of perjury at a trial, hearing, deposition or other proceeding." Id. (quoting Advisory Committee's Notes to Rule 801 at 1052).

Here, Joshua's testimony at trial that there was no second touching was contrary to the account that he had given in his witness statement, "[t]hat [defendant] grabbed [Joshua's] hand and made [him] touch [defendant's] exposed penis." Rule 607 of the Rhode Island Rules of Evidence provides, in pertinent part, that "[t]he credibility of a witness may be attacked by any party, including the party calling the witness * * *." Given the inconsistency between Joshua's testimony at trial and his witness statement, it was within the trial justice's discretion to allow the state to impeach him with his prior statement. Accordingly, defendant's argument with regard to the state improperly refreshing Joshua's recollection must fail.

## D

### Glenn's Witness Statement

The defendant's final point of contention concerns the trial justice limiting his use of the following portion of Glenn's witness statement:

> "I called the police and an officer came to speak to us. I then found out that the male tried to touch [Joshua's] penis and the male tried to have [Joshua] touch his penis. [Joshua] told the officer that the male asked [Joshua] to suck his penis." (Emphasis added.)

The defendant suggests that the word "tried" within this statement would have aided him in casting doubt as to the act of touching and that, had the word "tried" been entered into evidence, the trial justice would not have refused to give an instruction on a lesser included offense.[10] In

---

[10] While defendant suggests in his brief that the trial justice would not have refused to give a lesser included instruction had this evidence been admitted, he cites no case law and presents no

- 12 -

addition, defendant contends that this statement contradicts Glenn's testimony at trial when he stated that he did not learn much additional information as a result of Joshua's interview with police.

The defendant points to two places where he contends the trial justice improperly prevented him from using this statement. First, he suggests that the trial justice improperly denied defendant's use of the written statement during his cross-examination of Glenn. Second, he asserts that, during Officer Slack's testimony, the trial justice improperly excluded the statement based on his unfounded conclusion that the statement was already before the jury "by implication." We consider each of these contentions in turn.

With regard to defendant's assertion that the trial justice excluded defendant's use of the written statement on cross-examination of Glenn, such a suggestion is belied by the record. When defendant attempted to use Glenn's witness statement during his questioning, the state objected and a discussion at sidebar ensued. Contrary to defendant's assertion on appeal, however, the trial justice did not preclude defendant's use of the statement in cross-examination,

---

argument to challenge the trial justice's refusal to give such an instruction. We have held that this Court "consider[s] an issue to be waived when a party '[s]imply stat[es] an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues * * *.'" Bucci v. Hurd Buick Pontiac GMC Truck, LLC, 85 A.3d 1160, 1170 (R.I. 2014) (quoting State v. Chase, 9 A.3d 1248, 1256 (R.I. 2010)). The First Circuit has said it best:

> "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. * * * 'Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988)).

Thus, we do not consider defendant's argument to the extent that it may suggest that a lesser included instruction was warranted.

but, rather, corrected defense counsel's form of the question. Specifically, the trial justice expressed the following:

> "I'm okay with that question. * * * I was okay with you asking him that. * * * Let's clearly show that you are using it to show that he said something different in that statement than he said either previously or on this witness stand. So, that is all I'm asking. I just don't want you to read line by line to him and did you say that did you say that. I don't think that is proper use of that statement. I'm not aware of any rule that permits that."

In response, defense counsel stated: "That is fair enough. I can call the patrolman, Judge." Thus, the record makes pellucid that defense counsel was not precluded from questioning Glenn with regard to his witness statement. Instead, defense counsel abandoned his strategy to question Glenn with respect to this statement, and, instead, opted to use it to question Officer Slack. Accordingly, defendant's argument with respect to the use of Glenn's witness statement during his cross-examination must fail.

We turn next to defendant's assertion that the trial justice improperly excluded the statement during the examination of Officer Slack. On direct examination of the officer, defense counsel asked: "I understand that you say that [Joshua] never said the man tried to touch me, but in the statement that I show you—[.]" At that point, he was interrupted by an objection by the state, and the parties engaged in a discussion at sidebar. Defense counsel argued:

> "Judge, the witness just testified that at no point in time did [Joshua] ever say to him that the man tried to touch [him]. Recognizing that the statement I'm citing is the statement purportedly prepared by the Pawtucket Police after speaking to [Glenn], I'm merely asking this particular witness if this statement says that the male tried to touch [Joshua's] penis and the male tried to have [Joshua] touch his penis. I'm not even offering it for the truth of the matter asserted[;] merely these words appear in this document."

After this discussion, the trial justice sustained the state's objection, and defense counsel reiterated: "I would just ask my exception to be noted specifically on the grounds that I would

submit it is not hearsay because it is not being offered for the truth of the matter asserted merely that the words appear in a statement * * *."

The defendant's basis for objection before this Court is unclear. He appears to assert that the statement should have been permitted under Rule 801(d)(1)(A) as a prior inconsistent statement. However, the trial record makes clear that such an argument was not advanced below and, therefore, is deemed to be waived. See Bido, 941 A.2d at 828-29. Indeed, defense counsel set forth but one argument below: that the statement was not being offered for the truth of the matter asserted. Nevertheless, he abandons this argument before us and, therefore, we do not consider it.[11] See State v. Giordano, 413 A.2d 93, 94 (R.I. 1980). Thus, there is no argument with respect to the use of Glenn's witness statement in the examination of Officer Slack that is properly before this Court. Accordingly, we cannot conclude that the trial justice erred in any respect with regard to the defendant's use of Glenn's witness statement.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The materials associated with this case may be remanded to that court.

---

[11] Even if we were to consider it, however, it is entirely devoid of merit. The defendant sought to introduce this statement to prove exactly what the statement contained, that defendant tried to, but was not successful in, touching Joshua. Accordingly, it amounts to nothing more than inadmissible hearsay.

- 15 -



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          State v. Ricardo Florez.

**CASE NO:**                No. 2014-280-C.A.
                           (P2/11-86A)

**COURT:**                  Supreme Court

**DATE OPINION FILED:**  May 27, 2016

**JUSTICES:**               Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**             Associate Justice Gilbert V. Indeglia

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

                           Associate Justice Daniel A. Procaccini

**ATTORNEYS ON APPEAL:**

                           For State:  Aaron L. Weisman
                                       Department of Attorney General

                           For Defendant:  Eric H. Miller, Esq.
                                           Seth A. Perlmutter, Esq.