[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] BENCH DECISION GRANTING DEFENDANT'S MOTION TO DISMISS COUNT 3
Defendant Richard Reyes was charged in Count 1 of an indictment with having murdered his wife, Betsy Rodriguez. Count 2, charging him with unlawfully carrying a pistol without a license, was dismissed prior to trial. Count 3, which is the subject of today's proceedings, embraced the sentence enhancement provisions of R.I.G.L. § 11-47-3.2, alleging that the defendant discharged a firearm during a crime of violence resulting in death. That statute mandates that the Court impose a consecutive life sentence to the term imposed on the underlying crime of violence. The Rhode Island General Assembly has included murder as well as manslaughter in its definition of a "crime of violence." R.I.G.L. § 11-47-2.
Although the State prosecuted the case as a second degree murder, the jury convicted the defendant of the lesser offense of manslaughter. The defendant expressly waived his right to pursue a motion for new trial.
Prior to trial, pursuant to Rule 12(b)(2) R.Cr.P., the defendant moved to dismiss Count 3. The Court deferred ruling on that motion, pending the jury's decision. Notwithstanding a verdict of the lesser offense of manslaughter, the State has indicated in *Page 2 
its responsive pleadings that it will not dismiss Count 3. The State demands that a consecutive life sentence be imposed to any sentence the defendant receives on the manslaughter charge.
The defendant has renewed his motion to dismiss Count 3, claiming 1) that it transgresses his federal and state constitutional protections against double jeopardy, and 2) that the imposition of a consecutive life sentence violates federal and state constitutional protections against the imposition of cruel and unusual punishment.
There have been numerous appellate attacks on § 11-47-3.2. InState v. Linde, 965 A.2d 415, fn.1 (2009), the Rhode Island Supreme Court listed six such cases. Those appeals were pursued on various constitutional grounds: separation of powers, equal protection, double jeopardy, and cruel and unusual punishment. All of them and others since then have been unsuccessful. Every one of those cases, however, was premised on first or second degree as the predicate crime of violence. At no time has the Superior Court or the Rhode Island Supreme Court ever been confronted with manslaughter as the underlying predicate for which the State now demands that a consecutive life sentence be imposed.
At the outset, let me say clearly what this decision is not about. It is not premised on a violation of the defendant's double jeopardy protection. That avenue of the defendant's argument has been foreclosed. State v. Feliciano,901 A.2d 631, 647-48 (R.I. 2006); State v. Rodriguez,822 A.2d 894, 904-908 (R.I. 2003).
Nor is this decision in any way to be construed as a general condemnation of other mandatory sentences that have been enacted by the General Assembly. There are, for example, other firearm statutes that mandate a defined term of incarceration which *Page 3 
cannot be suspended. RIGL § 11-47-5: unlawful possession of a pistol without a license, second offense (mandatory two to ten years of incarceration, no suspension or probation of the sentence); RIGL § 11-47-3: committing a crime of violence while armed with or having a firearm available (mandatory jail term of three to ten years for the first offense, and several more mandatory years for subsequent such offenses, none of which can be suspended nor probation granted). In addition, the Habitual Offender statute (RIGL § 12-19-21) mandates that a consecutive sentence be imposed to the term ordered on the underlying case. State v. Chiellini,762 A.2d 450, 456 (R.I. 2000). Generally speaking, I have not balked at imposing those and other mandatory sentences on previous sentencing occasions. Indeed, many of the cases cited by theLinde Court were appeals from my own sentencing orders.
Courts are normally obliged to defer to the Legislature's sentencing directives, and judicial rejection of them is rare. InState v. Monteiro, 924 A.2d 784, 793-95 (R.I. 2007), the Supreme Court expanded upon that principle at some length, saying in part:
 This Court has long held that it is the prerogative of the General Assembly to define criminal offenses and set forth the sentences for those crimes and that when it does so, the Legislature is not intruding upon the judicial function . . . Although the Legislature may not encroach upon the judicial power by attempting to control or alter a judicial decision or a court's prior judgment . . ., the General Assembly is vested with the power to delineate criminal offenses and their punishments. Moreover, in recognizing the authority of the Legislature to determine the appropriate punishment for a given crime, this Court has refused "to substitute our will for that of a body democratically elected by the citizens of this state and to overplay our proper role in the theater of Rhode Island government." . . . Nor are we persuaded that the mandate of consecutive sentences for murder and using a firearm while committing that murder requires a different result. It is the Legislature's prerogative to authorize cumulative punishments; when it *Page 4 
does so, it is the judicial task to impose that sentence in due course.
 **** This Court has recognized that the Eighth Amendment contains a narrow proportionality principle such that a criminal sentence is excessive and unconstitutional if, inter alia, it "is grossly out of proportion to the severity of the crime." . . . In McKinney, 843 A.2d at 469, we adopted this narrow proportionality principle (that applies to both capital and noncapital sentences), as discussed by the United States Supreme Court.
 "The gross disproportionality principle reserves a constitutional violation for only the extraordinary cases." . . . "The overriding inquiry for determining `proportionality' is whether the sentence is commensurate with the gravity of the crime." . . . Thus, a constitutional violation will be found only in extreme circumstances in which the sentence is grossly disproportionate to the offenses for which defendant stands convicted. . . . A criminal sentence is disproportionate "if the sentence itself is unduly harsh when compared with the crime." [Citations omitted throughout.]
A state may and, in my view, should impose its harshest penalty upon a "cold-blooded, pitiless slayer" who kills without a qualm or conscience. State v. Garcia, 743 A.2d 1038, 1057 (R.I. 2000), citing Arave v. Creech, 507 U.S. 463, 470 (1993). Is Richard Reyes a cold-blooded, pitiless slayer who killed without compunction? If he is not, then is a mandatory consecutive life sentence unduly and unconstitutionally harsh when compared to the crime that he did commit? The answer to the first question must beno. Were it otherwise, the defendant would have been guilty of first degree murder, much less second degree murder which the State alleged.
Richard Reyes committed manslaughter, not murder. Murder, whether first or second degree, requires the element of malice.State v. Texieira, 944 A.2d 132, 142 (R.I. 2008);State v. Gillespie, ___ A.2d ___;2008 R.I. Lexis 114 (R.I. 2008). Manslaughter, on the *Page 5 
other hand, is the unlawful but unintentional killing of a person without malice or premeditation, for which the law places responsibility on a defendant because of an unlawful act which, although not amounting to murder, is nonetheless not so harmless as to relieve the defendant from all criminal responsibility.State v. Conway, 463 A.2d 1319, 1321-22 (R.I. 1983);State v. Hallenbeck, 878 A.2d 992, 1009 (R.I. 2005).
It is plain from the language in the Monteiro case that it was the proliferation of gang violence and malicious, rampant street shootings that prompted the Legislature to enact the subject statute:
 The record portrays a daylong gun battle on the streets and playgrounds of the city of Providence. After defendant declared his intention to kill a member of a rival gang, he fired his weapon on three separate occasions, culminating in the death of an innocent party. After reviewing this record, we are satisfied that this crime is precisely the type of gun violence that the Legislature intended to address when it provided for a mandatory consecutive sentence of life imprisonment for using a firearm while committing murder.
 We are not persuaded that this sentence is unconstitutional. Although this conviction constitutes defendant's introduction into the adult criminal justice system, this factor is outweighed by the nature of the crime and the state's public safety interest in preventing gang murders and indiscriminate shootings on the streets of our cities and towns. 924 A.2d at 795 (emphasis added).
It was obviously not someone like Richard Reyes who prompted the Legislature to enact § 11-47-3.2. It was a hoodlum like Mario Monteiro or Manny Pona, and the jarring memory of Jennifer Rivera's heartless murder that moved the General Assembly to endorse that statute.
As the Supreme Court indicated at page 795 in theMonteiro decision, the "nature of the crime" must be considered. Richard Reyes was not a ne're-do-well. He was a Pvt. *Page 6 
First Class soldier in good standing in the United States Army. He was on leave from his Army post in Virginia when this incident occurred. The weapon was not his, and the defendant had never fired it before. It was his sergeant's personal firearm, not his service weapon, and the only reason the defendant had it in the first place was to collateralize a loan he had made to the sergeant. On the day of the incident the defendant was about to finish his leave, drive back to Virginia, return to duty and give the gun back to his sergeant.
Nowhere in the record of this trial is there a scintilla of evidence, much less even a hint, of marital discord between Richard Reyes and his wife. She was not wounded during a domestic altercation or in the midst of an argument, but as a result of the defendant's criminal negligence handling a loaded pistol while sitting next to her in a car parked in the family driveway. It was a regrettable, reckless act that unintentionally caused her death, and not a result of any malice or premeditation, which is the stuff of first and second degree murder.
That is not to say that Richard Reyes somehow merits high marks for his conduct. He does not. Appropriate punishment will be imposed for unlawfully causing his wife's death, but to impose a consecutive life sentence would far exceed the constitutional boundaries of sentencing equations. Such a sentence would be, in this Court's view, grossly disproportionate to the offense for which the defendant stands convicted.
Second degree murder invites as much as a life sentence, and it is a mandatory sentence for first degree murder. The General Assembly has assigned no more than thirty years as the maximum penalty for the offense of manslaughter. On many occasions, defense attorneys at sentencing hearings have asked me to compare their clients' *Page 7 
impending sentences with those of similarly situated defendants. I have usually rejected those entreaties.
In the first place, each defendant ought to be considered individually, and not indifferently treated as simply an ingredient of some kind of homogenized blend. As I have said on many such occasions, I refuse to be trapped by comparisons. Secondly, the Rhode Island Supreme Court has made it clear that such comparisons are inappropriate unless the sentence is grossly disproportionate to the crime committed. Monteiro, 924 A.2d at 795.
Because this case, in my view, presents one of those rare circumstances, I requested the Judicial Technology Center to comb its computer records covering the past twenty years and identify sentences imposed in manslaughter cases. Where, as here, the defendant is closely related to the decedent, Superior Court Benchmark No. 26 suggests, but does not mandate, a jail sentence between five and seven years.
That JTC research disclosed seventy manslaughter convictions. Of those convictions, no Superior Court judge has ever imposed the maximum jail term of thirty years, and only two cases resulted in a twenty-year period of incarceration, one of which involved mental health custody. Ten cases resulted in a jail term of more than ten years. The vast majority of the incarcerations were less than ten-year terms, and a great many of those did not approach the five-year mark. Many of them resulted in jail terms of only a handful of months, and at least three were disposed of with deferred sentences.
The Eighth Amendment favors only extreme circumstances of disproportionately. This case, in view of its particular circumstances and against the backdrop of prior manslaughter sentences, is one of those singular cases. In that light, our State Supreme *Page 8 
Court and the United States Supreme Court, invite, nay demand, application of theEighth Amendment of the United States Constitution and Article I, § 8 of this State's Constitution.
For all of the foregoing reasons, the defendant's motion to dismiss Count 3 of the indictment is granted.
 **** So Ordered:

 *Page 1